BENJAMIN F. PARLETT and JOHN F. PARLETT, trad-
ing as B. F. PARLETT & Co. *vs.* HENRY GUGGEN-
HEIMER, MARCUS A. GUGGENHEIMER and CARRIE
GUGGENHEIMER, trading as GUGGENHEIMER & Co.

*Trade-mark—Simulation—Infringement—Injunction.*

A person who has simulated the trade-mark of another, cannot re-
strain a third party from making use of the same trade-mark.

In an action by certain manufacturers of plug twist chewing tobacco,
to restrain the use of a simulation of their trade-mark, consisting
in part of the words "Golden Crown," the defendants urged that
the plaintiffs were not entitled to the relief they sought because,
one Palmer of Chicago, had used this trade-mark, long before its adop-
tion and use by the plaintiffs. It appeared in evidence that Palmer
had brought suit in Pennsylvania to restrain one Harris from the
use of the trade-mark, "Golden Crown" upon cigars, and that
relief was denied him because he had marked on his cigar boxes
that the cigars were made in Havana, when in fact they were made
in New York. HELD:

That Palmer having forfeited his right to the exclusive use of this
trade-mark, the defendants could not successfully assert such right
for him, and their plea in that behalf was unavailing.

The trade-mark of the plaintiffs, manufacturers of plug twist chewing
tobacco, consisted of the words "Golden Chain," marked on the
boxes in which the tobacco was packed, and of four tin tags of a
particular size, shape, lettering, and position on each bar of the
tobacco, and of the words "Golden Crown" on each tag. The de-
fendants adopted as their trade-mark the words "Golden Chain"
in connection with tin tags of similar size and appearance to those of
the plaintiffs. HELD:

That while the mere use of the words "Golden Chain" was not an
infringement of the trade-mark of the plaintiffs, the fact that the
tobacco of the defendants, in every essential particular, was gotten
up in imitation of that of the plaintiffs, the imitation being so
close as to mislead the ordinary purchaser, did constitute an in-
fringement of the trade-mark of the plaintiffs, and they were en-
titled to protection.

Parlett & Co. *vs.* Guggenheimer & Co.

APPEAL from the Circuit Court of Baltimore City.

The appellants filed their bill of complaint, against the appellees, praying that an injunction might issue to restrain the defendants, their agents, servants and attorneys, from manufacturing or selling, or offering for sale plugs of tobacco of the kind described in the bill of complaint, having affixed thereon the designatory marks or tags entitled the "Golden Chain," or any other tags or marks so nearly resembling those of the plaintiffs filed with the bill of complaint, as to deceive persons purchasing said articles, until the matter could be heard and determined in equity. The bill also prayed that the defendants might make true and full disclosures of the sales made by them, of the amount of goods manufactured by them imitating the goods of the plaintiffs, and that they might be decreed to account therefor in full. And the bill prayed for such other and further relief as the circumstances of the case might require. Upon the bill of complaint an injunction was issued and served on the defendants. The defendants answered. Issue was joined and testimony taken; and after argument by counsel, the Court, (DENNIS, J.) passed a decree dissolving the injunction previously granted, and dismissing the bill of complaint. From this decree the complainants appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, and BRYAN, J.

*E. J. D. Cross*, and *John K. Cowen*, for the appellants.

Upon the facts it is submitted that a perpetual injunction should issue, restraining the defendants from selling their goods which imitate the goods of the plaintiffs, or which are so made that they would be calculated to deceive persons who would purchase them. The Supreme Court has, in the case of *McLean vs. Fleming*, 96 *U. S.*, 245, fully stated the law upon the subject of trade-marks. See

*Seixo vs. Provezende, L. R.*, 1 *Ch. App. Cases*, 195 ; *Orr, Ewing & Co. vs. Johnston & Co.*, 40 *L. T. N. S.*, 311, and *L. R.*, 7 *App. Cas.*, 219 ; *Read vs. Richardson*, 45 *L. T. N. S.*, 54.

The contention in this case is, that the defendants have been imitating the brand and trade-mark of the plaintiffs, which is of a particular description. They designed to counterfeit our goods ; they did so! Shall they go scot free because the plaintiffs innocently and unwittingly used the words "Golden Crown" which Lorin Palmer had used before ?

This is a defence which should not receive consideration in a Court of equity. The intention of the defendants was to introduce their particular article upon the market in competition with that of the plaintiffs, and that it should be so made and marked that it might be mistaken for the goods of the plaintiffs. They attempt to defend their conduct by saying that we have infringed the rights of Lorin Palmer. We answer that we were ignorant of Palmer and his rights.

The Supreme Court of Pennsylvania in the case of *Palmer vs. Harris*, 60 *Penn. State*, 156, decided that whatever those rights might be, he could not enforce them. If he could not enforce them, can the defendants protect themselves by setting them up ?

The contention then, is, that a Court of equity will refuse relief to the plaintiffs upon the ground that the plaintiffs do not come into Court with "clean hands." The particular spot is alleged to be the use of the words "Golden Crown," which had been used before by Lorin Palmer.

The learned Judge of the Circuit Court in his opinion states that he has no doubt that the trade-mark adopted by Guggenheimer & Company was a simulation of that of the Parletts, and was calculated to deceive the ordinary retail purchaser ; and further, that this simulation was

Parlett & Co. *vs.* Guggenheimer & Co.

intentional, for the purpose of enabling the Guggenheimers to put their goods on the market upon the reputation previously acquired by the goods of the Parletts; but he denied the relief sought by the complainants, solely upon the ground that one Lorin Palmer, of Chicago, had used the words "Golden Crown" upon cigars. He stated that he was of the opinion that the use by Palmer of the words "Golden Crown" upon cigars would cover all kinds of manufactured tobacco, whether for chewing or smoking, and that although Lorin Palmer never had manufactured plug twist tobacco, yet, by reason of the use upon cigars, he could prohibit such use upon plug twist tobacco, and that, therefore, the Messrs. Parlett could not use these words upon twist tobacco; and by reason of this, they could not prohibit the defendants from the designed simulation of their distinctive mark, and that they were, by reason of this defect, powerless to protect their reputation or their business interests from the piratical conduct of the defendants.

This opinion of the Court below is based entirely upon the view that chewing tobacco and cigars are of the same "class," and that by reason of the use of the words "Golden Crown," by Lorin Palmer, on cigars he had pre-empted these common words, and could prohibit their use for any other purpose, to designate any special product which was manufactured from tobacco, no matter how distinct such products might be. The Judge relies upon the case of *Carroll vs. Ertheiler*, 1 *Fed. Rep.*, 688, and *Collins Company vs. Ames' Corp.*, 20 *Blatch.*, 542.

These cases do not establish such doctrine to the extent which would control in this case. See *La Societé Anonyme vs. Baxter, et al.*, 14 *Blatchf.*, 261.

The Guggenheimer goods are an intentional fraud upon the goods of the appellants, and upon this branch of equity jurisdiction we submit that an injunction should

issue to prevent their dissemination. *Sawyer vs. Horn,* 1 *Fed. Rep.*, 24.

*Wm. Henry Browne,* and *Wm. Pinkney Whyte,* for the appellees.

The decision of the Circuit Court of the United States for the Northern District of Illinois, (*Lorillard, et al. vs. Pride,* 28 *Fed. Rep.,* 434,) makes it clear that tin, or other metallic tags, of a *circular* or any other form, are common property, and may lawfully be used by any person as an affix to plug tobacco, by reason of the patent therefor having been declared void.

The case of *Palmer vs. Harris,* in 60 *Penn.,* 1, is really an authority in favor of Palmer's right to the trademark. He undertook to couple with his trade-mark of "Golden Crown," the assertion on his goods, that they were manufactured by him in Havana of its best tobacco, when in truth they were manufactured in New York; and because the Court refused the injunction in that case, the appellants maintained that it was conclusive against us, but the Judge of the Circuit Court, thus spoke of that proposition :

"It was also urged that the effect of the decision of the case of *Palmer vs. Harris,* 60 *Penn. State,* 1, was to deprive Palmer of the right to the exclusive use of his trade-mark of 'Golden Crown,' and to leave it free to the use of all ; but I do not so understand it. That was a bill filed by Palmer against one Harris, to restrain the latter from the use of the trade-mark 'Golden Crown' upon cigars, and the injunction was refused by the Court upon the ground that Palmer's labels, containing the designation, also contained words in Spanish, calculated to produce the impression that the cigars were made in Havana, and hence he was not entitled to the protection of a Court in his attempt to perpetrate a fraud upon the community. But the Court seemed to recognize the

validity of the trade-mark when not vitiated by the fraud; and I can conceive of no reason why a proper use by him of the mark, in another case, or as to another kind of goods, would not be entitled to protection, notwithstanding the fact that the injunction was denied him in that case."

It is beyond disputation that before the plaintiffs can sustain their injunction, they must establish clearly their exclusive *title* to the trade-mark. This they must do by proving an original use of the words composing the trade-mark, by themselves, in connection with the articles designated by the trade-mark. *Rodgers vs. Newell,* 6 *Hare,* 325; *Motley vs. Downman,* 3 *My. & Cr.,* 17; *Bacon vs. Jones,* 4 *My. & Cr.,* 433; *Coffeen vs. Branton,* 5 *McLean,* 256; *Momson vs. Moat,* 9 *Hare,* 255; *Wyeth vs. Stone,* 1 *Story Rep.,* 282.

The party claiming property in this trade-mark, said to be violated, must be the first to use it for that purpose. *Upton on Trade-Marks,* 47. The protection of the Court will not be given, if the party seeking it, is not entitled to the exclusive use of the trade-mark said to be violated. *Upton on Trade-Marks,* 22, *and* 30 *near bottom.*

Phrases or even words, in common use, may be adopted for the purpose, if *at the time of their adoption* they were not employed by another to designate the same or similar articles of production or sale. *McLean vs. Fleming,* 96 *U. S.,* 254.

The Circuit Court in this case, in dissolving the injunction said:

"Although Palmer has never manufactured plug tobacco, yet his trade-mark of Golden Crown for cigars, covers all kinds of manufactured tobacco, whether for chewing or smoking—the Courts having repeatedly held that a valid trade-mark used on one kind of goods, covers all other kinds of the *same class.* *Carroll vs. Ertheiler,* 1 *Fed. Rep.,* 688; *Collins Co. vs. Ames' Corp.,* 20 *Blatch.,* 542."

The character of the resemblance to the trade-mark alleged to be violated depends on circumstances.

Parlett & Co. *vs.* Guggenheimer & Co.

- " What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that Courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled." *McLean vs. Fleming*, 96 *U. S.*, 251.

If the deception will not deceive the *ordinary mass* of purchasers, the injunction will be denied. *Merrimac Manf. Co. vs. Gardner*, 4 *E. D. Smith*, 387 ; *Amoskeag Manf. Co. vs. Spear*, 2 *Sandford*, 607.

In *Leather Cloth Co. vs. Am. Leather Cloth Co.*, 11 *Jur.* (*N. S.*,) 513, the Court said : " Unless a purchaser could be deceived by the similarity of the trade-marks, he could not be deceived at all, and the House of Lords thought that the two trade-marks were so different that no one could suppose them the same."

Parties will be restrained by injunction from putting up goods in packages in imitation of others in the trade, calculated to deceive the buying public, and to defraud the original users of such packages ; but such imitation must be sufficiently close to have that effect, or the injunction will be refused. *Gail, et al. vs. Wackerbarth*, 28 *Fed. Rep.*, 286.

But Courts of equity will not interfere when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. *McLean vs. Fleming*, 96 *U. S.*, 255.

There is no rule as to what degree of resemblance constitutes fraudulent or colorable imitation. The question is whether ordinary purchasers, buying with ordinary caution, are likely to be misled. *Robertson vs. Berry, et al.*, 50 *Md.*, 597.

STONE, J., delivered the opinion of the Cort.

The learned Judge of the Circuit Court of Baltimore City in the opening of his very lucid opinion in this case says :

Parlett & Co. *vs.* Guggenheimer & Co.

"From an inspection of the exhibits filed in this case, and an examination of the testimony, I have no doubt that the trade-mark adopted by the defendants is a simulation of that of the plaintiffs calculated to deceive the ordinary retail purchaser; and I think the testimony further shows, that the simulation was designed for the purpose of enabling the defendants to put their goods upon the market upon the reputation previously acquired by the goods of the plaintiffs."

To the views so far expressed by him we fully assent; but he goes on to say that while that is so, the plaintiffs are not entitled to the relief they ask, because according to the evidence, one Lorin Palmer, of Chicago, long before the plaintiffs used the trade-mark, had adopted and used it, and therefore they could not have an injunction against others when they themselves were liable to one at the suit of Palmer. From these latter views we are compelled to dissent.

One defence set up by the defendants is in fact a *quasi* admission that they were simulating the trade-mark of the plaintiffs, but that the plaintiffs were simulating the trade-mark of Palmer and therefore could not complain of them. It is a plea of confession and avoidance, but it still would be a good plea if sustained by the proof, for if the evidence does show that the plaintiffs were committing, by the use of their trade-mark, a fraud on Palmer, they are in no condition to complain of the defendants' fraud on them.

The appellants, plaintiffs below, are manufacturers of plug twist chewing tobacco and their trade-mark consists of the words "Golden Crown" marked on the boxes in which the tobacco is packed, and in addition four tin tags of a particular size, shape, lettering and position on each bar of the tobacco, and on each tag, also the words "Golden Crown." These tin tags form a very important part of the plaintiffs' trade-mark. The tin tag device was adopted to prevent

frauds on the retail purchaser, who could then be sure that he obtained what he wanted, and of which he could not be sure as long as the trade-mark was only on the top of the boxes in which the tobacco was packed.

The trade-mark of Palmer, which the plaintiffs are charged with using, are the words Golden Crown. He used no tin tags or anything on the bars of tobacco, but only used his trade-mark on the *packages* of manufactured tobacco and on the boxes of cigars.

It is also shown that Palmer had used this trade-mark from 1858, long before the adoption by the plaintiffs of their trade-mark, and it is further shown that the plaintiffs were in entire ignorance of its use by Palmer up to the bringing of this suit.

It also appears from the agreement in this case, that this Lorin Palmer brought suit about 1869, against one Harris of Philadelphia, claiming that Harris was simulating his trade-mark, and seeking a Court of equity to restrain him. Harris in his answer admitted the imitation, but based his defence upon the fact that Palmer had no standing in a Court of equity to get the relief he asked, because he, Palmer, had marked on his cigar boxes, that the cigars were made in Havana when in fact they were not made there, but made in New York, *and this Palmer admitted*, and the Supreme Court of Pennsylvania decided that Palmer was not entitled to relief.

The Court said in substance in that case, that the ground for relief for simulating trade-marks was the promotion of honesty and fair dealing, and that equity would not extend its protection to one whose case is not founded on truth.

It appears also from the agreed statement of facts that Harris has continued since that trial to manufacture the labels and has not been disturbed by Palmer.

Trade-marks are protected by Courts of equity for two reasons. One is to secure to the honest, skilful and indus-

trious manufacturer the legitimate fruits of his skill and industry, and the other to protect the public against the frauds of unprincipled venders, who seek to pass off spurious wares as those of established reputation under the name of the genuine commodity.  *Upton on Trade-marks, pages* 28 *and* 29.  The same author goes on to say that such protection is only afforded the *honest* manufacturer, and that where a person seeks by representations which are untrue (whether forming a part of his trade-mark or not), to mislead the public into a belief that his commodities have an origin other than the true one, he is entitled to no relief against any one who may see fit to appropriate it.  *Flavell vs. Harrison,* 19 *En. L. & E. R.,* 15; *Fetridge vs. Wells,* 4 *Abbott's Practice Reportts,* 144.  In this last case the Judge in his opinion says:  "Those who come into a Court of equity seeking equity must come with pure hands and a pure conscience.  If the sales made by the plaintiffs are effected, or sought to be by misrepresentation and falsehood, he cannot be listened to when he complains that by the fraudulent rivalry of others, his own fraudulent profits are diminished.  An exclusive privilege for deceiving the public is assuredly *not* one that a Court of equity can be required to sanction.  To do so would be to forfeit its name and character."

From these and many similar cases which might be cited, the conclusion is irresistible, that he who seeks to mislead the public and to palm off on it the spurious for the genuine article under the guise of his trade-mark, or coupled with it, forfeits for all time, *not* his right to use his trade-mark, for with that the Courts will not interfere, but his right to have that trade-mark protected.  The record of his conviction of the fraud is the conclusive proof of it.  Courts will not try over and over a question that has been settled by a Court of competent jurisdiction over both the person and subject-matter.  When therefore the Supreme Court of Pennsylvania, in a suit begun by him-

self, decided that Palmer had forfeited his right *to be protected* in the use of the trade-mark " Golden Crown " the production of that record will be sufficient for the same purpose in every other Court. He invited the issue—He was duly heard upon it and if it is found against him he must abide the consequence.

Lorin Palmer is not himself concluded by the decision in this case, as he is no party to this suit, and we would very cheerfully have avoided all reference to him or his case. But the defendants have thrust him forward as a witness upon whom they relied, to prove that he had the *exclusive* right to the trade-mark. Golden Crown, and the plaintiffs produced the record to show that he had now no such exclusive right. That record we are bound to consider and give to it its legal effect.

From what we have said it is apparent that in our opinion Lorin Palmer by his false representations, of which he stands duly convicted, has placed himself outside the pale of the protection of a Court of equity, in any *exclusive* use of this trade-mark. He can of course go on and use it as long as he pleases, but the right of *exclusive* use is gone from him forever. If Palmer himself could not be successfully heard in a Court of equity asserting his right to the exclusive use of this trade-mark, certainly the defendants cannot successfully assert his right for him. They cannot do for him what he cannot do for himself, and their plea in that behalf is unavailing.

We have been discussing heretofore only the question of the right of the plaintiffs to the use of the words Golden Crown as a trade-mark, or part of a trade-mark, and shown that they have that right.

But the defendants have not used the words Golden Crown at all. " Golden *Chain* " is what they have adopted as part of their trade-mark, and if the only question in the case was whether the words Golden *Chain* was an infringement of the trade-mark of Golden Crown we should unhesitatingly say it was not.

Parlett & Co. *vs.* Guggenheimer & Co.

But the words Golden Crown and Golden Chain only constitute a part of the respective trade-marks of the plaintiffs and the defendants. The tin tags, marked, lettered and arranged as we have said, constitute the most material part of the trade-mark of the plaintiffs.

The infringement complained of here is that the tobacco of the defendants in every essential particular, is gotten up in imitation of the plaintiffs, and that the imitation is so close as to mislead the ordinary purchaser. The exhibits will convince every impartial observer that such is the fact, and the evidence will convince any impartial judge that this similarity is the result of design and not of accident.

The law applicable to cases like this is fully stated in the case of *McLean vs. Fleming*, 96 *U. S.*, 245 ; and an extract from the opinion in that case will cover this.

" Much depends," says the Court, " in every case upon the appearance and special characteristics of the entire device ; but it is safe to declare as a general rule that exact similitude is not required to constitute an infringement, or to entitle the complaining party to protection. If the *form, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device,* is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable relief."

Many cases might be cited extending and amplifying this doctrine, but we will content ourselves with but one more extract, and that from the English case of *Or, Ewing & Co. vs. Johnson & Co.*, 7 *Appeal Cases*, 219, where the Judge, in delivering the opinion of the House of Lords, said: " No man, however honest his intentions, has a right to adopt and use so much of his rival's trade-mark, as will enable any dishonest dealer into whose hands his goods may come, to sell them as the goods of his rival."

When we consider that the article, chewing tobacco, is bought and used most extensively by a large class of the illiterate and ignorant, we think no stronger case of infringement by simulation than this, can be found in the books.

The decree of the Court below must be reversed and the case remanded, that an injunction may issue as prayed, and an account be taken, if desired, as is usual in such cases.

*Decree reversed, and*
*case remanded.*

(Decided 23d June, 1887.)