CASES IN CHANCERY, 1919–1920. 233

*91 N. J. Eq.* Taxi and Yellow Taxi Operating Co. *v.* Martin.

TAXI AND YELLOW TAXI OPERATING COMPANY

*v.*

HARRY MARTIN.

———

TAXI AND YELLOW TAXI OPERATING COMPANY

*v.*

STEPHEN HARVEY.

———

TAXI AND YELLOW TAXI OPERATING COMPANY

*v.*

JOSEPH P. DUNN.

[Submitted November 2d, 1919.   Decided November 28th, 1919.]

It is unfair trade, for which an injunction will issue, for competitors to paint their taxi cabs so that by the ordinary patron they are not distinguished from those of complainant which had earned a patronage and good-will under a peculiar and distinctive painting of its cabs, the predominant feature being the conspicuous yellow body.   The defendants are barred by their intentional fraud of the plea of common property in color.

———

On final hearing, &c.

*Mr. John A. Bernhard* (*Mr. Merritt Lane,* of counsel), for the complainant.

*Messrs. Riker & Riker* (*Mr. Andrew Van Blarcom*), for the defendants.

BACKES, V. C.

The complainant operates a line of taxi cabs in Newark, and has an established business known as the "Yellow Taxi Cabs" service. It has earned its trade and the good-will of the taxi-riding public by efficient and satisfactory service, and by extensive advertisement. Its taxi cabs are popular, and well known by their peculiar and distinctive dress—black, with yellow body, chassis and wheel spokes trimmed yellow, and are familiarly known as the "Yellow Taxi Cab" or "Yellow Taxis." The complainant's principal stations are at the Pennsylvania and Central railroad depots, in Newark, where it has contractual privileges. The three defendants are competitors, with a station at the Central railroad depot. There they jointly maintain an office and 'phone for receiving and answering calls. Up until last August they operated taxi cabs painted solid black. At that time they each purchased new ones of the same general type, as to structure and design, as the complainant's, but dark over all in color. For the purpose of attracting trade, as they admit, they had the bodies repainted yellow, like those of the complainant's cabs. There is a shade's difference; the defendants' cabs appearing to have faded slightly by longer exposure. This is observable on side-by-side comparison, with good light, but with the cabs apart is not appreciable. I have inspected the two sets of cabs and they are as near alike as the proverbial peas in a pod. The defendants point to certain features in their cars as distinguishing them from the complainant's. Their emblem on the doors is a circle, while that of the complainant is a keystone, and slightly larger. Their wheel spokes are black. Their cabs carry no meter; the complainant's do. Their chauffeurs are not in uniform; the complainant's are. Their head lights differ from those of the complainant's. One carries a spot light; the other does not. These are variations, not distinctions. They are, no doubt, recognized by the expert automobilist, but with the ordinary patron and the undiscriminating public they pass unnoticed. The predominant feature that catches the eye and makes the impression is the conspicuous yellow body.

The motive and object of the defendants in adopting the get-up of the complainant's cab is palpable, and the conclusion

CASES IN CHANCERY, 1919–1920. 235

*91 N. J. Eq.*   Taxi and Yellow Taxi Operating Co. *v.* Martin.

is irresistible that they deliberately set out to annex the complainant's patronage by palming off their cabs for those of the complainant's. They had previously intimated their purpose, in confidence, to their friends. Such conduct in trade is unfair, unconscionable and fraudulent and will be enjoined. *International Silver Co.* v. *Rogers,* 67 *N. J. Eq.* 646; *L. Martin Co.* v. *L. Martin & Wilckes Co.,* 75 *N. J. Eq.* 257. It is a lame, and obviously false, excuse the defendants naively give for the imitation—that yellow, of approximately the same hue used by the complainant, was ingenuously chosen because of its more durable quality than other colors—considering that the paint on their newly-painted cabs would last the average life of a taxi cab. But, even if this excuse were true, it would not avail, for, whether the similarity be calculated or accidental, if it appears that the resemblance necessarily or probably tends to deceive the public into the belief that the taxi cabs of the defendants are those of the complainant, it would be prohibited as unfair trading. Confusion has, in fact, resulted from the close resemblance. The principles of law on the subject are so familiar to the student of the opinions of this court and the appellate court that extended citation of authorities would be useless labor. The latest expression of the doctrine concerning unfair trade is to be found in the opinion of the court of errors in *Hilton* v. *Hilton,* 90 *N. J. Eq.* 564, where many of the cases are gathered.

The defendants contend, in justification of their action, that, as color is common property, it cannot be monopolized by the complainant. That is true, as a general proposition, but it begs the question. Nims, in his work on *Unfair Competition and Trade Marks 238,* succinctly answers the argument in this manner:

"One often sees the rule stated that the use of color or form or shape or any of the characteristics which may be used by all in the making of an article does not, of itself, amount to unfair competition. This is true in a sense and untrue in another sense. The effect of imitating a single feature of an article varies with every case. No definite rule can be laid down. It depends on the conspicuousness of the feature copied. Will its use of this feature cause buyers of the articles to be confused and deceived? If it will, the question then arises, as to the extent to which the court has power to enjoin its use. It can grant no decree which

will give to the complainant a monopoly of the use on any particular line of goods of any color, form, size or other common feature of the article. If, however, the plaintiff has used a peculiar form, or shape or size, he will be protected in its use even against one who copies his goods in this one particular only. Seldom does the newcomer in any commercial field have absolute rights as to the use of these common characteristics of the article he sells. He must first consider, not himself, but those who entered the field before he did, with whom the public have become acquainted. If he cannot enter the business without confusing himself with one or more of these older concerns, he will be compelled to stay out. Said the Massachusetts court on this point as to the use of an oval loaf in the manufacture of bread: 'And the defendants would have a right to make and sell bread which has that shape, were it not for the fact that bread of that shape means to the public that it is made by the plaintiff.' *Fox* v. *Best Baking Co.* (*1911, Loring, J.*), *209 Mass. 251.*"

See, also, *Hopk. Trade Marks* § *116; 38 Cyc. 842; Buck's Stove and Range Co.* v. *Kiechle, 76 Fed. Rep. 758; Florence Manufacturing Co.* v. *Dowd & Co., 178 Fed. Rep. 73; Coca Cola Company* v. *Gay-Ola Company, 200 Fed. Rep. 720; Moxie Company* v. *Daoust, 206 Fed. Rep. 434; Winterton Gum Co.* v. *Auto-sales Gum Co., 211 Fed. Rep. 612; Hiram Walker & Sons* v. *Grubman, 222 Fed. Rep. 478.*

Another answer is, that in this instance the defendants barred themselves of the plea of common property by deliberately planning and executing their scheme to capture the complainant's patrons by applying the common color to their cabs in simulation of those of the complainant—intentional fraud. *International Silver Co.* v. *Rogers, supra; L. Martin Co.* v. *L. Martin & Wilckes Co., supra.*

The defendants will be enjoined from operating their cabs for public hire, in Newark, in their present garb.

Complainant is entitled to costs.