# ROBERT C. MUNDON v. TAXICAB COMPANY.

*Unfair Competition—Taxicab Companies—Copying Another's
Color Scheme—Injunction—Carrier—Payment
of Commissions.*

An attempt, by copying the color combination of another's
taxicabs, to appropriate some of the fruits of such other's enter-
prise and labor, is a wrong which a court of equity will prevent
by injunction.                                    p. 452

While there is no exclusive property in color, the decoration
by defendant of his taxicabs massed in exactly the same arrange-
ment as that which has been used by plaintiff on its cabs for a
number of years, and has come to signify, in the public mind,
plaintiff's cabs, is ground for an injunction, in spite of varia-
tions in the details of the dress and fittings of the cabs.
                                         pp. 452, 453

That yellow has the greatest visibility of all colors, and that
its use on a cab therefore enhances the safety of operation, did
not justify the use by defendant of the same shades of colors
as those used by plaintiff, in the same arrangement and com-
bination with black.                              p. 454

That plaintiff advertised itself as the "Yellow Cab Com-
pany," while its corporate name was the "Taxicab Company,"
did not, as showing that it did not come into court with clean
hands, affect its right to an injunction against another's imita-
tion of the color scheme of its cabs.           pp. 454, 455

Code, art. 2, sec. 18, requiring registration of the names of
principals or owners and other facts concerning a business con-
ducted in this state by agents, or under a title or designation
other than its own name, has no application except for the pur-
pose of protecting creditors.                    p. 455

Code, art. 23, sec. 365, prohibiting rebates or special favors
by common carriers, is concerned only with dealings between

carriers and users of their facilities, and does not render illegal the payment of commissions to third persons, which in no way redound to. the advantage of the users.        pp. 455, 456

*Decided November 12th, 1926.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by the Taxicab Company against Robert C. Mundon. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Joseph C. France* and *W. Howard Hamilton,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, defendant below, appeals from a decree enjoining him from operating taxicabs owned by him, in Baltimore City, without taking measures to distinguish them in appearance from those of the Taxicab Company, now named the Yellow Cab Company, the appellee. The evidence establishes these facts:

The Taxicab Company has been operating cabs in the city since 1909, and for the first ten years of that period had them painted in a uniform combination of colors, with brown predominating. They were then commonly known as brown cabs. In 1919, the uniform color combination was changed, and a combination of orange yellow with black was adopted, in order, as the president of the company testified, to have "a more distinctive color, something that would give us greater value for the purpose of emphasizing the cab and services in the public mind." There were then fifty

cabs. Since that time, the number in operation has increased to one hundred and seventy, all bought of the Yellow Cab Manufacturing Company, at a total cost of $360,000; and they have been advertised extensively at a total cost of $83,000. It is also established by the evidence that by thus bringing its cabs in this color combination conspicuously before the public, the company has identified them in the public mind as those of the one particular organization, and by maintaining a good quality of service has built up a valuable trade and good will for them. Evidence was given of preferences of at least some individuals for them. Contracts have been made with hotels and owners of other public places for privileges and assistance in obtaining passengers, usually upon an arrangement for the payment of commissions for the assistance.

The arrangement of colors is: the body in orange yellow below, the doors outlined with black; top, hood and fenders in black; disc wheels in orange yellow again with black hubs. On the door there is a round emblem in gold, white and blue, six or eight inches in diameter; and a number is painted on the side and back. It is the custom of all large operators of taxicabs in the city to put their cabs out in uniform color combinations, and all are thus distinctly marked in different combinations. Throughout the period since 1919, when the present color combination was adopted by the appellee, the company styled itself, in its advertising, "The Yellow Cab Company," and its cabs are commonly known as the "yellow cabs." In December, 1925, after this proceeding was instituted, the name of the company was formally changed to "Yellow Cab Company," by an amendment of its charter.

In the year 1925, the appellant, Robert C. Mundon, bought a taxicab with a Dodge chassis, painted blue, and had it repainted in approximately the same shade of orange yellow, and a very dark blue black, in practically the same markings or arrangement of the colors, that is to say, the lower body is in the yellow, with the doors outlined in black, and the top, hood and fenders are in black. The differences between

the two cabs in appearance are, that there is to be observed, by matching the colors closely, a slight difference in the shades of yellow; the disc wheels are mainly yellow in the company's cabs, but light blue in Mundon's; there is no emblem on the side of Mundon's cab; each company cab has a "vacant" sign, a light on the meter and cowl lights, while Mundon's has none of these, his cab having only standard headlights. And Mundon's cab has no number. The company's drivers wear uniforms, with yellow bands on the caps, and the appellant's driver wears no uniform, although he sometimes wears a chauffeur's cap. None of these differences seem to be sufficient to distinguish the cabs of the two proprietors in the sight of the ordinary customers. There is testimony of instances of actual confusion. And photographs of the appellant's cab and of a sample cab of the appellee, each photograph colored by a painter from the original, were introduced in evidence below, and, by agreement, have been exhibited in this court, and show, we think, that confusion must almost inevitably occur. The resemblance is so close that deliberate copying seems to be the only explanation of it. And we conclude that the appellant has, in fact, attempted, by copying the color combination of the appellee's cabs, to appropriate some of the fruits of the latter's enterprise and labor. And, that such an attempt is a wrong which a court of equity ordinarily prevents, need not be argued at any length now. *Robertson v. Berry,* 50 Md. 591. In all other jurisdictions where this exact question has arisen, the attempt has been prevented by an injunction similar to that decreed in this case. *Taxi & Yellow Taxi Operating Co. v. Martin, Harvey, & Dunn,* 91 N. J. Eq. 233; *Yellow Cab Co. v. Becker,* 145 Minn. 152; *Yellow Cab Co. v. Jones,* 156 La. 837; *Yellow Cab Co. v. Creasman,* 185 N. C. 551. And see notes, 17 *A. L. R.* 784, 787, and 28 *A. L. R.* 115.

Some defenses common to all these cases have been presented in this one. It is contended that, inasmuch as the resemblance is one of colors, it affords no ground for interference by the court, on the principle that mere color is not

regarded by the law as susceptible of exclusive appropriation. There is no resemblance in emblems or lettering; nothing in the shape or size of the appellee's cab which distinguishes it from any other cabs, or to which there might be an exclusive right if it did. The resemblance is one of colors. But it is also, and chiefly, in the arrangement or massing of the colors on the two cabs that the resemblance is brought about here. The complaint is not so much of the use of the same colors as it is of the use of the same identifying combination of those colors. "One often sees the rule stated," says *Nims on Unfair Competition and Trade Marks* (2nd Ed.), 238, "that the use of color or form or shape or any of the characteristics which may be used by all in the making of an article does not, of itself, amount to unfair competition. This is true in a sense and untrue in another sense." And the court in *Yellow Cab Co. v. Jones,* 156 La. 837, said, "It is true, as a general proposition of law, that there is no exclusive property in color. That, however, is not the present issue. The question to be determined here is: Has the plaintiff company so far established a trade-name in the words 'Yellow Cab,' 'Yellow Cab Company' and the colors, style, design, form and dress as they are combined and used on its taxicabs to invoke the equitable process of injunction to protect it against resemblances and imitations designed and tending to deceive and mislead the public and to deprive plaintiff of the profits of its business. We think it has." *Yellow Cab Co. v. Becker, supra; Taxi & Yellow Taxi Operating Co. v. Martin, supra.* So the wrong here is in the decoration of Mundon's cab with yellow and black massed in exactly the same arrangement as that which has been used by the appellee since 1919, and has come to signify, in the public mind, the appellee's cabs. For that wrong an injunction may issue, as stated in the cases cited.

We have already spoken of the variations in the details of the dress and fittings of one cab and the other; they have, in our opinion, no practical distinguishing effect. As the New Jersey court said of much the same differences, "These

are variations, not distinctions." *Taxi & Yellow Taxi Operating Co. v. Martin, supra.*

A defense made here, and not made in any of the cases cited, is that yellow has the greatest visibility of all the colors, and, therefore, its use on a cab so enhances the safety of operation that it is to be regarded as having functional connection with the proper operation of taxicabs generally, that it should be regarded in the light of a safety device. Expert testimony of the high visibility of yellow was given at the hearing, and the appellant testified that he chose the color for its visibility and its durability. *Marvel Co. v. Pearl,* 133 Fed. 160; *Pope etc. Co. v. McCrum-Howell Co.,* 191 Fed. 979; *Shredded Wheat Co. v. Humphrey Cornell Co.,* 250 Fed. 960. But that contention does not answer the objection to the use of the same shades of colors here in the same familiar arrangements. As Judge Frank, in the trial, pointed out, the greater visibility could have been obtained by the painting of the whole cab in yellow. A distinct shade could have been made use of, or a distinct appearance achieved by a combination with some color other than black. And the markings of the older cabs with the yellow and black need not have been copied so closely. *See Shredded Wheat Co. v. Humphrey Cornell Co., supra.*

The appellant here also contends that, whatever might be the rights of any other cab company in this situation, this particular one is disentitled to relief by a court of equity because it does not come into court with clean hands. Complaint is made of the use of the term "The Yellow Cab Company" in the advertising matter published, while the corporate title, specified in its charter, was the Taxicab Company; and there is testimony of the entry of suits against it under the name of the Yellow Cab Company. But we do not see that there is any relevant misrepresentation in this, if there is any misrepresentation at all. There is no effort made in it, and no tendency, to palm off the cab as other than it is, and so no possibility of detriment or deception to customers, as there was in the cases relied upon by the appellant. *Sie-*

*gert v. Abbott,* 61 Md. 276; *Kenny v. Gillett,* 70 Md. 574;
*Houchens v. Houchens,* 95 Md. 37. On general principles,
this use of the additional, descriptive title would seem to be
no defense to allowing the company what would otherwise
be its due. The case, on this point, is analogous, we think,
to that of the use by a corporation of a title indicating a
partnership, which has been dismissed as a matter of in-
difference to purchasers of its goods. *Holmes v. Holmes,*
37 Conn. 278; *Kusnetzky v. Insurance Co.* (Mo. 1926), 281
S. W. 47, and general note with authorities, 45 *A. L. R.* 234.

But the appellant refers, in addition, to the statute, (Code
Pub. Gen. Laws, art. 2, sec. 18), which requires registration
of the names of principals or owners and other facts con-
cerning any mercantile, trading or manufacturing business
conducted by persons in this state as agents, or under titles
or designations other than their own names. Section 20
of the same article gives other protection, in cases of failure
to file the certificates, to "any person or corporation who
shall become a creditor of such person or persons." Even
if these sections could be construed to include the business
of a taxicab company within the category of "mercantile,
trading, or manufacturing business," they could not be given
an effect beyond their manifest purpose of protecting
creditors. There is no evidence that the appellee has dealt
with possible creditors under any title other than its own,
or in any way tending to mislead them. We think this
objection, too, to be untenable.

Finally, complaint is made that the payment by the
appellee of commissions on business influenced to it by hotels
and other organizations gives rise to a disqualification, be-
cause of the provision in article 23, section 365, of the Code
of Public General Laws, prohibiting rebates or special favors
by common carriers to shippers or other persons paying com-
pensation for service. But it would seem to be a sufficient
answer to this that the statute is manifestly concerned only
with the dealings between the carriers and users of their
facilities; it is not concerned with commissions paid to third

persons which in no way, and to no extent, redound to the advantage of the users, and so far as the record discloses, such is the effect of the practice of paying commissions complained of here, and we see nothing in this to disentitle the appellee from receiving at the hands of the court the relief to which a cab owner who does not pay such commissions would be entitled.

*Decree affirmed, with costs to the appellee.*

PARKE, J., dissents on the sole ground that he does not agree that the color scheme and markings of the cabs of the competing cab companies are so similar as to constitute unfair competition on the part of the appellant.