**TIME, Incorporated, Plaintiff,**

v.

**MOTOR PUBLICATIONS, Inc., Defendant.**

Civ. No. 7445.

United States District Court
D. Maryland.

May 11, 1955.

Semmes, Bowen & Semmes, William D. Macmillan and William A. Fisher, Jr., Baltimore, Md., and Harold R. Medina, Jr., New York City, for plaintiff.

Buckmaster, White, Mindel & Clarke, Everett L. Buckmaster and George L. Clarke, Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, Chief Judge.

This is a suit for trade-mark infringement and unfair competition brought by the plaintiff, Time, Incorporated, a New York corporation, publisher of the maga-

848

zine "Life", against the defendant, Motor Publications, Inc., a Maryland corporation, publisher of the magazine "Car Life".

The proceeding is before the Court on plaintiff's motion for summary judgment. There is no material factual issue involved; it is conceded that plaintiff is entitled to injunctive relief in some form, the sole question being as to the breadth of that relief.

The trade-mark "Life" has been registered in the United States Patent Office, and has been used continuously by plaintiff and its predecessors since 1883. Since 1936 plaintiff has published a weekly pictorial magazine under the title "Life" printed in white block letters on a red rectangular background, which has been sold throughout the United States and in various other countries, and has a present average circulation of more than five million copies a week. Plaintiff claims that the essential elements of the "Life" trade-mark are (1) the word "Life"; (2) use of block letters; (3) use of a rectangular background, and (4) use of the colors red and white, and that defendant has copied all four of these elements on the covers of its magazine, the only difference being that it has used the word "Car" immediately preceding the word "Life". The defendant began the publication of its magazine "Car Life" in 1954. In the early issues of this magazine which is published monthly and its size is considerably smaller than that of "Life", the name "Car Life" was printed on the front and back covers in white block letters on a red rectangular background; in other words, the same in format and color as the title of "Life" magazine, except for the addition of the word "Car" preceding the word "Life". On later issues the name has appeared on a yellow or blue rectangular background; and the white block letters are outlined in black. Defendant claims that these changes eliminate any right which plaintiff may have previously had for injunctive relief against defendant.

In addition to having jurisdiction over the present proceeding by reason of diversity of citizenship between the parties and the amount involved, this Court also has jurisdiction by virtue of the provisions of the Lanham Act, 15 U.S.C.A. §§ 1114, 1121 and 1127, relating to infringement of registered trade-marks; and also under Section 1338(b) of the Judicial Code, 28 U.S.C.A. § 1338 (b) which gives to the District Courts original jurisdiction of any civil action based on a claim of unfair competition when joined with a substantial and related claim under copyright, patent or trade-mark laws.

It is clear that no more than a casual glance at the defendant's title as originally displayed on its magazine, that is, in white block letters on a red rectangular background, is necessary in order to create in one's mind a feeling that there is some relationship between the plaintiff's and the defendant's magazines insofar as their publication is concerned. It is well settled that the test of infringement of a trade-mark does not depend upon the use of identical words, nor on the question whether the words are so similar that a person looking at one would be deceived into the belief that it was the other. It is sufficient if one adopts a trade-name or trade-mark that is so similar to another in appearance or sound that one is likely to become confused or misled. Certainly, the simulation by the defendant, in the early issues of "Car Life", of the trade-mark of "Life" was so great as respects both format and color that we do not believe there was anything fortuitous in this similarity, but that it was the result of an intent to capitalize upon the publicity and prestige that had been obtained by "Life" magazine.

The objects that underlie the law of trade-marks and unfair competition are to protect those who are honest in their business; to punish the dishonest dealer who takes, or aims to take his competitor's business away by unfair means; and also to protect the pub-

lic from deception. The law looks with suspicion upon the person who, in advertising his products for sale, dresses them up in a manner so similar to that employed by his business rival that the public may fail to distinguish between the two. "The law is not made for the protection of experts, but for the public —that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73, 75. See also Parlett & Co. v. Guggenheimer & Co., 67 Md. 542, 10 A. 81; Mundon v. Taxicab Co., 151 Md. 449, 135 A. 177; Baltimore Bedding Corporation v. Moses, 182 Md. 229, 34 A.2d 338; W. G. Reardon Laboratories v. B & B Exterminators, 4 Cir., 71 F.2d 515; Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 7 Cir., 215 F.2d 434; Time, Inc., v. Ultem Publications, Inc., 2 Cir., 96 F.2d 164.

The question here presented is not whether any one may obtain an exclusive property right in color or in the word "Life". The answer to that is "no". The question is whether the plaintiff has so far established a secondary meaning in the trade-mark "Life" through the color, style, design, form and general make-up of the trade-mark as to entitle it to protection against resemblances which are likely to deceive or to mislead the public, and thereby to injure the plaintiff and to deprive it of just profits from its magazine. In order to obtain injunctive relief against such possible injury, it is not necessary for the one alleged to be injured to produce evidence of actual confusion between the two products, but merely a reasonable likelihood of such confusion, *or* confusion as to whether the two products have the same producer. The public knows the trade-mark "Life" not only from "Life" magazine but also from the "March of Time News Reel", picture publications such as "Life's Picture History of World War II", and radio and television presen-

tations sponsored by "Life". Since 1936 the plaintiff has expended more than $75,000,000.00 on promotion of its trademark. "Life" leads the list of national weekly magazines both in net paid circulation and in advertising rates, and also ranks ahead of all other national advertising media. In the automotive field, that is, the very field to which defendant's publication is devoted, "Life's" promotional activities have been very extensive. For example, in the year 1953 passenger car advertising in "Life" magazine totaled over $8,000,000.00. Thus, a very important factor in the present case is the extensive promotional use of the trade-mark "Life" by those who advertise in "Life" magazine. In other words, the public who have seen products advertised in "Life" are "pre-sold", so to speak, with regard to those products, and therefore any device calling to the public's attention, at the place where particular products are sold, the fact that they were advertised in "Life" is a substantial inducement to the public to purchase such products.

The present plaintiff obtained injunctive relief against publishers of "Movie Life" under circumstances similar to those in the present case. See Time, Inc. v. Ultem Publications, Inc., supra. There, the publisher of "Life" was granted an injunction restraining the publishers of "Movie Life" from using the same color in the make-up of the latter's cover, and requiring a change of color so as to clearly distinguish it from that of the cover of "Life", notwithstanding the fact it was unlikely that anybody would buy "Movie Life" supposing it to be "Life"— (just as it is not likely that one would buy "Car Life" supposing it to be "Life"),—since similarity of make-up generally signifies the same source, and the publisher of "Movie Life" was likely to be taken as the publisher of "Life", and the publisher of "Life" was entitled to insist that its reputation should be of its own making. The basic provisions in the injunction granted in that case contained a prohibition against simulating the present color and lay-out of

the cover of the magazine "Life" in any of the defendant publications; making use of the name "Movie Life" in white letters against a red background; using a combination of the colors red, gray and white so as to simulate the color, design or lay-out of the cover of the magazine "Life" in any of the defendant publications, and having the name "Movie Life" appear in plain block letters of the same or approximately the same size as the name "Life". The Appellate Court, in affirming substantially the decree of the lower Court, said, 96 F.2d 164, 165: "We see no reason to disturb the disposition made below as to the name, 'Life,' or the use of block letters. Whatever may be the situation after a trial, the plaintiff has not yet shown why it should be allowed to monopolize the word as a title for a picture magazine, and the added fact that it is written in block letters is scarcely more than a make-weight, if indeed it is as much. However, it appears to us that the make-up, or 'lay-out,' of the defendant's cover as a whole is too close to the plaintiff's, and that its color ought to be changed. There is no suggestion that such a combination had ever appeared before the plaintiff adopted it, nor does the defendant attempt to excuse imitating it so closely. It is of course true that nobody would buy 'Movie Life,' supposing it to be 'Life,' but that possibility is not the only grievance of which the plaintiff may complain. Similarity of make-up usually signifies the same source; the publisher of 'Movie Life' is likely to be taken as the publisher of 'Life'; if so, the plaintiff may insist that its reputation shall be of its own making alone. * * * It is probably too soon to learn whether any actual confusion will result, certainly the plaintiff has not so proved that it has yet done so; but the similarity could scarcely have been accidental in origin, and the defendant refused to make any change when challenged at the very outset. Imitation may supply the place of proof; the plagiarist's motive can only be some advantage to himself, which is most likely to be, in part at any rate, the likelihood that his wares will be taken as first-comer's. It rests with him to disprove this natural inference; until he does we may accept his own estimate of the probabilities. While, therefore, the defendant may be able to prove upon the trial that no confusion can arise, until it does, if it wishes to use the title, 'Movie Life,' it must change the color of the cover so as clearly to distinguish from that of the plaintiff."

■ It is clear from the affidavits and exhibits that have been introduced at the hearing, both in support of and in opposition to the plaintiff's motion for a summary judgment, that the plaintiff is entitled to a decree restraining the defendant from directly or indirectly in any way (a) simulating the name and mark "Life"; (b) giving undue prominence to the word "Life" in relation to the word "Car" in the title "Car Life", either by means of size, style of type, coloring or any other device; and (c) using the title "Car Life" in block letters in white, black or any color on a rectangular block background of any shade of red or on such a background of white.

The plaintiff's counsel have urged that the decree should go further and prohibit defendant from using its title "Car Life" under any circumstances in white letters on a solid red or any shade of red cover page, or red or any shade of red letters on a solid white cover page, even though there be no semblance of a rectangular space in which the words "Car Life" appear, and even though the lettering used is not block lettering, or has no similarity to block lettering. Counsel for plaintiff have also asked for certain other extensions of the prohibitions above set forth. However, we conclude that with the aforegoing, the plaintiff is amply protected in accordance with its legal rights. A decree will therefore be signed accordingly.