**In the Matter of LEXINGTON APPLI-ANCE COMPANY, Inc., Bankrupt.**

**No. 10988.**

United States District Court
D. Maryland.

March 16, 1962.

See also 185 F.Supp. 235.

Louis J. Sagner, Baltimore, Md., for Sanford A. Harris, Trustee.

Morris A. Baker, Baltimore, Md., for Allied Appliance Distributors, Inc.

WINTER, District Judge.

This petition to review the decision of the Referee in Bankruptcy challenges the determination by the Referee that certain merchandise in the possession of the bankrupt, and delivered to it by Allied Appliance Distributors, Inc., was on consignment, and that title did not pass to the Trustee.

After the bankrupt had consented to an order of adjudication, and while a receiver was in possession of the bankrupt estate, an order was passed authorizing the receiver to sell electrical appliances and kindred products and merchandise

at public auction. Allied Appliance Distributors, Inc. (Allied) then filed its petition seeking a return of certain described appliances which it claimed were delivered to the bankrupt under an agreement whereby title to the merchandise remained with Allied until the merchandise was paid for by the bankrupt. Allied and the receiver agreed that the public sale should proceed and that the claim of Allied, if any, should be transferred to the proceeds derived from the sale. After full hearing, the Referee directed the Trustee to pay $3,043.80 to Allied, and the Trustee questions the correctness of this determination.

The formal findings of fact of the Referee, made after all testimony was considered, included, *inter alia,* the following:

"(3) On July 11, 1956 petitioner [Allied] shipped radios, television sets and phonographs to the bankrupt. The invoice for this shipment shows in the blank where the word 'Terms' is printed the typewritten words 'Trust Receipt.'

"(4) Thereafter from March 21, 1957 to August 14, 1958 petitioner shipped additional merchandise to the bankrupt under invoices which indicate that the terms were either 'Trust Receipt' or 'Net 10 days.' The great majority of these invoices bear the typewritten notation: 'Title of said merchandise remains with Allied Appliance Distributors, Inc. until said merchandise is paid for.'

"(5) The bankrupt, by authorized agent, signed a copy of these invoices and thereby acknowledged receipt of the merchandise but the petitioner did not file a statement of trust receipt financing as authorized by Maryland law. The parties did not intend to enter into trust receipt transactions.

"(6) Petitioner's books indicate that when merchandise was delivered to the bankrupt entries were made debiting sales and crediting accounts receivable. At the end of the year, petitioner included those articles supplied to the bankrupt and not sold by it in the inventory of petitioner's goods. In addition, petitioner carried fire insurance in the amount of $10,000.00 upon 'merchandise on consignment' which was intended to cover merchandise at the two places of business of the bankrupt. Petitioner also took a complete count of all merchandise supplied to the bankrupt and on hand once a month. Petitioner from time to time recalled merchandise which had been supplied to the bankrupt.

"(7) The bankrupt was given a duplicate of the petitioner's ledger cards covering merchandise supplied. *The bankrupt was not called upon to pay for merchandise supplied in accordance with this agreement until the goods were sold by it except in a few instances where items supplied by the petitioner were found to be missing and the bankrupt paid for them even though they had apparently been stolen and not sold.* The evidence does not disclose that the petitioner controlled the price to be charged by the bankrupt. When the merchandise was sold by the bankrupt, the bankrupt was not required to segregate the proceeds of the sale. The bankrupt would remit the invoice price of the goods supplied by petitioner and sold by the bankrupt within one month after the date of the sale by it. The remittance would identify the article or articles sold. The bankrupt was allowed to return merchandise supplied by the petitioner when the bankrupt felt that it was overstocked or in the case of air conditioners when the season for such goods ended so long as the merchandise was in sealed cartons." (Italics supplied.)

From these findings, the Referee concluded that the arrangement between Allied and the bankrupt was a consign-

ment agreement, that the consignment agreement was not abandoned, and that Allied was entitled to receive the net proceeds of the sale of the merchandise shipped to the bankrupt in accordance with the agreement.

■ A careful reading of the transcript of testimony presented to the Referee shows that the Referee's findings of fact were amply supported by the evidence, and they are adopted by the Court. When the applicable rules of law are considered, the conclusion of the Referee that the merchandise was in the hands of the bankrupt pursuant to a consignment agreement was manifestly correct.

■ A consignment is generally defined as a bailment for care or sale, where there is no obligation to purchase on the part of the consignee. The presence or lack of an obligation to purchase or pay for the goods on the part of the consignee is the most important factor in determining whether the agreement may be termed a consignment, because, if the alleged consignee is absolutely bound in all events to pay for the goods unsold, even though title is reserved in the alleged consignor, the transaction is a sale, or at least a conditional sale. These characteristics of a consignment appear from the following authorities: Sturtevant Co. v. Cumberland, Dugan & Co., 106 Md. 587, 617–618, 68 A. 351 (1907); McGaw v. Hanway, 120 Md. 197, 87 A. 666 (1913); In re Sachs, 31 F.2d 799 (D.C.Md.1929); In re Sachs, 21 F.2d 984, 986 (D.C.Md.1927), aff'd. in part, rev. in part, 30 F.2d 510 (4 Cir. 1929); Reliance Shoe Co. v. Manly, 25 F.2d 381 (4 Cir. 1928); 4 Collier,

Bankruptcy, § 70.18(5]. Collier collects numerous authorities on the point. One, discussing most fully the elements of consignments and stressing that in alleged consignments the principal criterion is the obligation, if any, on the part of the alleged consignor to pay for the goods, is In re National Home & Hotel Supply Co., 226 F. 840 (D.C.E.D.Mich. 1915). The Reliance Shoe case, supra, makes it clear that if there be conflict, the acts of the parties must prevail over their designation of their relationship. Manifestly, the Referee was correct, on this record, in attaching no basic significance to the designations "Trust Receipt" or "Net 10 days" on the invoices.

The Trustee contends that, notwithstanding that the agreement between Allied and the bankrupt was a consignment and hence title to the merchandise was not in the bankrupt, Allied's title was defeated because the bankrupt failed to record notice of its agency relationship in compliance with the Annotated Code of Maryland, Article 2, § 18 et seq., rendered the merchandise subject to levy by creditors of the bankrupt. This contention is founded upon § 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5), which vests title in the trustee of " * * * property, including rights of action, which prior to the filing of the petition he [bankrupt] could by any means have transferred *or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *.*" (Italics supplied.)[1]

The legal effect of noncompliance with §§ 18–20 of Article 2 of the Maryland Code[2] on the title of a trustee of a

---

**1.** The unitalicized portion of § 70, sub. a (5) can have no application, because the authorities state that while the act of the consignee may result in transfer of title to a transferee, title actually passes from the consignor to the transferee.

**2.** Art. 2, § 18:

"Any person or persons, engaged in any mercantile, trading or manufacturing business as agent or agents, or doing business in any name or under any title

or designation other than his or their own name or names, shall, * * * file in the office of the clerk of the circuit court for the county wherein such business is conducted, or in the office of the clerk of the Superior Court of Baltimore City * * * a certificate in writing, under oath, disclosing the true and correct name or names and the address or addresses of the principal or principals or true owner or owners of the said business, the character and location

bankrupt consignee in regard to the consigned merchandise has been considered by this Court on several occasions. Judge Soper, while a District Judge, in In re Eichengreen, 18 F.2d 101 (D.C.Md. 1927), aff'd. on other grounds, 25 F.2d 381 (4 Cir. 1928), expressed the view that the failure to record resulted in the trustee's prevailing over the consignor. Conversely, Judge Coleman, in In re Sachs, 31 F.2d 799 (D.C.Md.1929), reached a different result based upon § 9 of Article 2.[3] Both decisions were reviewed by Judge Chesnut in In re Nickulas, 117 F.Supp. 590 (D.C.Md. 1954), aff'd. per curiam, Tatelbaum v. Refrigeration Discount Corp., 212 F.2d 877 (4 Cir. 1954).

As Judge Chesnut pointed out in part, neither previous decision is entirely satisfactory, because Judge Soper's statement (a) is dictum, (b) was not supported by the decisions of the then United States Circuit Court of Appeals which he cites, (c) was affirmed by the appellate court without even mention of the dictum, and (d) failed to consider the effect of § 9 of Article 2, relied on by Judge Coleman; while Judge Coleman's opinion fails to mention or demonstrate an awareness of Judge Soper's earlier statement. A knowledgeable commentator has pointed out the possibility that the Maryland law has not conclusively been determined, Arnold, The 1950

Amendment To The Preference Section of The Bankruptcy Act and Maryland Law, XIV Md.L.Rev. 311, 331, et seq., (1954).

The basic problem is one of local statutory interpretation. Cases elsewhere demonstrate that recording is essential to preservation of the consignor's title where the local statute so requires, In re Miske, 159 F.Supp. 677 (D.C.E.D. Wis.1958), but unnecessary where such a local requirement is lacking, Sandack v. Tamme, 182 F.2d 759 (10 Cir. 1950). Although § 9 of Article 2 was first enacted and has remained unamended since 1825, Ch. 182, Acts of 1825, and § 18 et seq., were first enacted and have remained unamended since 1922 (Ch. 381, Acts of 1922), no decision of the Maryland Court of Appeals has passed on the point, other than to say that Chapter 381 was enacted to provide protection to creditors, Mundon v. Taxicab Co., 151 Md. 449, 455, 135 A. 177 (1926). See also Syriani v. Gebhart, 195 Md. 69, 72 A.2d 766 (1950). To the extent that there has been a Maryland decision on the subject, In re Sachs, supra, has been the case.

Absent a compelling reason to depart from the holding of In re Sachs, which I do not find, I see no reason to depart from what has been considered the Maryland law for thirty-three years. Accordingly, I follow In re Sachs, and the order of the Referee is affirmed.

thereof and the name, title or designation under which said business is conducted * * *."

Art. 2, § 20:

"If any person or persons, * * * shall fail to file the certificate * * * any person or corporation who shall become a creditor * * * shall have the right to maintain a suit or action in any court * * * and all of the goods, merchandise, fixtures, machinery, chattels or other property possessed, used or acquired in the said business shall be liable to

seizure and sale under execution in satisfaction of such judgment and costs * * *."

3. Art. 2, § 9:

"The owner of any such goods, wares or merchandise in the hands of an agent or factor, unsold and not pledged, may demand and recover the same from such agent or factor, or the trustee of such agent or factor in the event of his insolvency, and in preference to all other creditors of such agent or factor."