[Civ. No. 472. Fourth Appellate District.—September 12, 1931.]

HARBOR SUPPLY COMPANY (a Corporation), Respondent, v. MOTOR BOAT ASTORIAN et al., Appellants.

Loucks & Phister for Appellants.

Liggett & Liggett for Respondent.

MARKS, J.—Respondent is a corporation whose principal place of business is in the city of San Pedro, California,

where it is engaged in the business of supplying gear, tackle and supplies to ocean-going boats. The defendants J. V. Giaconi, Mrs. K. M. Giaconi and Peter M. Hanson were the owners of the ocean-going motor boat Astorian, which was engaged in fishing along the Pacific Coast from Alaskan to Mexican waters.

On or about October 1, 1929, J. V. Giaconi, acting as managing agent for the boat, leased it to Y. Ito for the period of one year at a cash rental payable monthly in varying amounts. It was agreed that Ito should, at his own cost and expense, keep the Astorian in good, operative condition, tight, staunch, well fitted and tackled and that he would pay all expenses of the operation thereof including the gear and the supplies used during the term of the lease. He was given the option to purchase the boat on or before October 1, 1930, which he did not exercise. By the terms of the agreement he was prohibited from selling, mortgaging or otherwise disposing of the Astorian and agreed not to permit it to be attached or taken upon execution.

Ito and J. V. Giaconi were brought together by John Vitalich, who was vice-president and a director of the respondent corporation. All negotiations for the terms of the lease were conducted through Vitalich and the document itself was prepared in his office.

Shortly after October 1, 1929, Ito took possession of the Astorian. He was introduced to respondent by Vitalich and bought goods and supplies from respondent in San Pedro, which were of the total reasonable value of $1968.18, upon which he paid the sum of $653.97, leaving a balance unpaid of $1314.21, which forms the basis of this action.

Within a year from the time the supplies were furnished Ito, respondent brought this action to recover the unpaid balance of the bill. It also sought to have decreed that its claim was a lien upon the boat and that the boat be sold to pay the amount of the judgment, interest and costs. The court rendered judgment against Ito for the principal of the unpaid bill together with interest and decreed the amount a lien upon the Astorian paramount to all other liens existing upon said boat prior to October 10, 1929. It further decreed the foreclosure of said lien against the defendants J. V. Giaconi and Y. Ito and ordered the Astorian

sold in liquidation thereof. No attachment has been issued upon the boat. This appeal is taken by the defendant Motor Boat Astorian and the defendant and claimant J. V. Giaconi.

Appellants strongly urge that in so far as this action is against the Astorian and the judgment of the court decrees the claim of plaintiff a lien upon the boat and orders it sold to satisfy such lien, it is an action *in rem,* of which the courts of California have no jurisdiction.

It is well settled that the judicial powers of the federal government extend to all cases of admiralty and maritime jurisdiction (Const. U. S., sec. 2, art. III), to the exclusion of the state courts, in actions strictly *in rem.* (*Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149 [11 A. L. R. 1145, 64 L. Ed. 834, 40 Sup. Ct. Rep. 438].) Actions *in personam* involving supplies furnished an ocean-going boat, with ancillary attachment proceedings upon the vessel may be brought in the state courts. (*Rounds, etc.,* v. *Cloverport etc. Co.,* 237 U. S. 303 [59 L. Ed. 966, 35 Sup. Ct. Rep. 596].) Such a proceeding is sometimes denominated as an action *quasi in rem.* (*Siler Mill Co.* v. *Nelson Co.,* 94 Wash. 477 [162 Pac. 590].)

The respondent maintains that the action is brought under the provisions of section 813 et seq. of the Code of Civil Procedure and is not an action *in rem,* but an action *in personam* with ancillary proceedings for the attachment of the vessel, of which the state courts have jurisdiction. The appellants reply to this argument by urging that in so far as section 813 of the Code of Civil Procedure attempts to give the state courts jurisdiction to proceed against a sea-going vessel and sell the same for supplies furnished, it is an action *in rem* of which the courts of California have no jurisdiction. In support of this contention they cite the case of *The Moses Taylor* v. *Hammons,* 4 Wall. 411 [18 L. Ed. 397], which reversed a decision of the Supreme Court of this state and held somewhat similar provisions of the Practice Act of California unconstitutional. They further cite the case of *Stephens* v. *Weyl-Zuckerman & Co.,* 34 Cal. App. 210 [167 Pac. 171], which they seek to construe as a similar holding upon the present provisions of the Code of Civil Procedure.

From the view we take of the case we do not find it necessary to determine these questions raised by appellants. For the purpose of this decision we will assume, but not hold, that the provisions of section 813 et seq. of the Code of Civil Procedure, in so far as they permit an action to be brought against the Motor Boat Astorian, its attachment and the establishment of a lien thereon, together with its sale to satisfy a judgment for supplies furnished, are constitutional and vest jurisdiction in the state courts to entertain such an action.

The provisions of section 813 of the Code of Civil Procedure applicable to this case are as follows:

"When vessels, etc., are liable. Their liabilities constitute liens. All steamers, vessels and boats are liable: (2) for supplies furnished in this state for their use at the request of their respective owners, masters, agents or consignees."

It is immediately apparent from the language here employed that the supplies which can form the basis of such a lien must be purchased at the request of either the owner, the master, the agent or the consignee of the boat. · Supplies purchased by a person not coming within one of these classifications could not furnish the grounds for any such lien.

The record discloses that the respective parties entered into a stipulation in the lower court, the material parts of which are as follows:

"That Y. Ito was not an owner and was never master of the said vessel; at least he was not an owner unless he had a sort of equitable ownership under a charter party which he had with Giaconi and the other owners; . . .

. "That immediately thereafter, after the making of the charter party, the possession and control of the said vessel was delivered to the said Y. Ito, and the said Y. Ito thereupon employed a crew of two men and a master for the said vessel and ·commenced to use it; that Y. Ito thereafter purchased of and from the plaintiff various supplies such as are ordinarily and customarily used by fishermen in the lobster fishing business, such as groceries, hardware supplies, fishing tackle, boat, equipment, rubber boots, and articles of similar character. . . .

"That all of the materials and supplies sued for herein were delivered by the Harbor Supply Company, this plain-

tiff, to the boat Astorian, and they were all ordered by the said Y. Ito or his agents; . . . ''

It appears from this stipulation that Ito was not the owner of the Motor Boat Astorian. He was simply the lessee thereof under the contract which we have referred to and had a mere option to purchase the boat. Ownership implies title. An option to purchase does not pass title to the optionee. Respondent stipulates lack of title in Ito, which excludes him from the classification of an owner.

The stipulation further provides that he was never master of the vessel, but hired a master to navigate it. The liability of a boat and its owners for supplies purchased by a master grows out of the doctrine of the agency of the master for the owners. As the master of the boat, during its possession by Ito, was not appointed by its owners, and as the supplies were not purchased by the master but by Ito, neither the owners nor the boat could be held for their purchase price under this classification. (24 R. C. L. 1135.)

The third classification of persons who may bind the owners and the boat are agents. We need only to bear in mind the facts of this case to conclude that Ito was not the agent of the owners. He was simply a lessee of the Astorian and operated it for his own use and profit.

■ Who may be considered a consignee of the owners of a boat presents a more interesting question. A consignee is defined by section 2110 of the Code of Civil Procedure as a person to whom freight is to be delivered. Of course, this definition cannot apply in the instant case. A consignee is also defined as follows:

''A person to whom goods are shipped for sale; a purchaser to whom goods have been sent. It is undoubtedly true that a consignee is often a purchaser; but it is not necessary that he should have any interest in the goods consigned to him. The consignee belongs to that class of agents called factors, title to the property remaining in the consignor, with power in the consignee to sell the property on account of the consignor.'' (12 C. J. 527.)

It has also been held that a consignee is a person to whom personal property of any kind is delivered for the purpose of sale. (*Commonwealth* v. *Harris,* 168 Pa. 619 [32 Atl. 92]; *Powell* v. *Wallace,* 44 Kan. 656 [25 Pac. 42];

*Romeo* v. *Martucci*, 72 Conn. 504 [77 Am. St. Rep. 327, 47 L. R. A. 601, 45 Atl. 1, 99].)

It would seem that the latter definition of the term "consignee" as it is used in subdivision 2 of section 813 of the Code of Civil Procedure is the only one which could be applicable to the facts of this case. Here it must be held to mean the person to whom personal property is delivered for the purpose of sale. The statement of this definition necessarily excludes Ito from coming within its terms. The boat was not consigned to him for the purpose of sale. He was prohibited from selling it by the express terms of the contract under which he gained its possession.

We have therefore concluded that Ito was neither the owner, master, agent nor consignee of the Motor Boat Astorian as the terms are used in section 813 of the Code of Civil Procedure. The case cannot come within the provisions of the section we are considering, as a lien must be supported by a purchase of the supplies by one coming within one of the four classes mentioned in the section. Respondent cannot complain of this conclusion. Its vice-president, who was one of its directors, was fully advised of the terms of the contract or charter-party under which Ito had possession of the boat. If respondent desired to protect itself by a lien on the boat it should have done so by proper precautions taken prior to the sale of the goods and merchandise to Ito.

Appellants urge that a large quantity, if not all of the supplies furnished by respondent to Ito, were not ship's stores, but were used by Ito to barter for lobsters caught in Mexican waters. While this is probably true as to a considerable portion of these supplies, some of them at least were consumed on the boat. The record does not disclose what quantity was used for barter and what portion was consumed as ship's stores. Ito paid a portion of his bill. As far as the record goes, this payment may have covered the value of the goods used by him in barter.

That portion of the judgment declaring and decreeing a lien upon the Motor Boat Astorian and ordering its sale in satisfaction of the money judgment rendered against Ito is reversed.

Jennings, Acting P. J., and Allison, J., *pro tem.*, concurred.