FLORENCE E. KERNAN, Now FLORENCE E. WACKER, APPELLANT, *v.* FRANCIS M. KERNAN, RESPONDENT.

No. 4430

March 1, 1962                              369 P.2d 451

*Emerson J. Wilson, Robert H. Moore,* and *William E. Freedman,* all of Reno, for Appellant.

*Ernest S. Brown,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Florence E. Kernan, now Florence E. Wacker, appeals from a judgment in which Francis M. Kernan, her former husband, was permitted to set off against Mrs. Kernan's suit for accrued alimony under a New York decree sundry amounts paid to her by Dr. Kernan in various years preceding the entry of the New York judgment. Appellant contends that such action on the part of the trial court was error in not giving full faith and credit to the New York judgment; that it was also error because such present defense was available to him in the New York action referred to and also in prior actions between the same parties; that it was error to hold that payments made by her husband to her were payments that he was not obligated to make, by reason of her default in violating a provision permitting him to visit the minor children of the parties; that it was error for the court to allow a further setoff of $150 growing out of a long-standing note in such sum payable by the wife to the husband.

As we have concluded that a reversal must be had by reason of the court's failure to give full faith and credit to the New York decree, and because of the application of the rule of res judicata, the other assignments of error will require little more than casual mention.

The prior litigation between the parties was extensive

and a chronology thereof will be of assistance in understanding the facts.

Suit No. 1. Action by husband in New York for specific performance of a separation agreement of August 17, 1938. This eventuated in a new agreement February 9, 1940 governing property rights and custody and interest of the three minor children of the parties.

Suit No. 2. Divorce action by husband in Florida wherein the wife obtained a divorce and a decree providing for approval of the February 9, 1940 agreement.

Suit No. 3. Wife's action in New York for defaulted payments under the agreement of February 9, 1940 up to December 15, 1940. The husband appeared and interposed several defenses. These were rejected and judgment entered March 14, 1941 in wife's favor for $877.25.

Suit No. 4. Wife's New York action to recover defaulted payments from December 15, 1940 to October 1, 1941. The husband appeared and defended. Judgment was entered in the wife's favor for $1,887.50.

Suit No. 5. Wife's New York action to recover defaulted payments from October 15, 1941 to November 15, 1942 in the sum of $2,700. Although the husband was personally served in New York City November 19, 1942, he failed to appear. On July 20, 1951 his default was entered and judgment taken against him in the sum of $4,123.24, being the total amount of payments in default as prayed for in the complaint, plus interest and costs.

Suit No. 6. This is the present action to enforce the judgment in suit No. 5. The present appeal is from the judgment in suit No. 6.

The court below filed a written opinion (followed by formal findings of fact in the precise words of the opinion), which we may condense as follows:

The City Court of New York, which rendered the judgment in suit No. 6, had full jurisdiction. Such judgment entered July 20, 1951 was for $2,700, plus interest and costs aggregating $4,123.24. The defendant defaulted in that action and presented no defense either as to the amount due or sums to be set off, nor did he attempt to interpose any equitable defenses; "after the New York court judgment was entered, the defendant

cannot go behind it to interpose any defenses he may have had in that action up to the time the judgment was entered," that time being July 20, 1951; "the New York judgment for $4,123.24 upon which this action was brought must be given full faith and credit by this court." "In this action, however, before the court, the defendant is free to interpose any defenses he may have against the collection of the judgment, such as payment or setoff."

Having thus accorded full faith and credit to the New York judgment, the trial court then proceeded to consider sundry payments made by Dr. Kernan to his wife under the stipulation of February 9, 1940, referred to under suit No. 2. The court held that she had violated that stipulation by failing to pay certain insurance payments and by denying her husband rights of visitation, both of which items were provided for in the stipulation, with the further provision that in the event of her failure so to perform, he could suspend payment 15 days after his notice to her of her default and until such default had been cured, and that by reason of such circumstances no further sums were due from the husband to the wife after March 12, 1940. The court then found that although the validity of any such payments *otherwise* due up to November 17, 1942 (suit No. 5), and included in the New York judgment, could not be questioned "because this was a defense Francis M. Kernan failed to present in that action, [a]ny such payment not legally due *after* 17 November 1942 but which Francis M. Kernan nevertheless made, may be credited as a setoff against the judgment." The court then found that Kernan had paid his wife $4,223.67 after November 17, 1942 and was entitled to set this off against the New York judgment because of his "making the above mentioned payments after his legal obligation to do so had ceased. * * * Therefore, the Court determines that the Judgment has been paid."

The particular significance of the payments made to his wife and of other credits, to which the court found he was entitled, is that they were all made during the

time of his military service and the years immediately following his establishment of residence in Reno in the beginning of 1946. They were all prior to the 1951 judgment. They were payments that were required to be made under the 1940 agreement. If there was a period of time during which such payments were excused because of his wife's failure to pay life insurance premiums or because of her refusal to permit him to visit the children, these were matters to have been presented in defense of the action in which the New York judgment was entered. They were susceptible of pleading and proof in that action. They did not constitute setoffs against the 1951 judgment itself. To permit them to be considered in the present action as matters in setoff against the defaulted payments that were involved in that action under the guise of setoff against the judgment itself is simply to permit the former action to be tried over again. In other words, it violates the requirement that the judgment in the New York action be accredited full faith and credit. Biel v. Godwin, 69 Nev. 189, 245 P.2d 997. It also violates the rule of res judicata. In Gulling v. Washoe County Bank, 29 Nev. 257, 266, 89 P. 25, 28, this court said: "No proposition of law is more thoroughly settled than that, when issues between parties to an action have once been tried and finally determined, whether such determination is erroneous or not, the same questions cannot again be litigated by such parties or their privies." Nor is the result different where the first judgment was entered by default. English v. English, 9 Cal.2d 358, 70 P.2d 625, 128 A.L.R. 467, 30A Am.Jur. 297. And the first judgment is conclusive not only as to every matter that was offered in that action to sustain or defeat the demand, but as to every other matter that might have been offered for that purpose. Wolford v. Wolford, 65 Nev. 710, 200 P.2d 988. It was error to permit such setoff.

Respondent contends that in any event the 1951 judgment may be attacked on the grounds of extrinsic fraud; that the evidence supports such claim of extrinsic fraud and that although the lower court did not find extrinsic

fraud and did not base its judgment in favor of respondent on extrinsic fraud, nevertheless the judgment denying relief to appellant may be supported on such ground, as implying a finding in support thereof. We do not think that this is a logical contention. Neither in its written opinion nor in its findings did the trial court so much as mention fraud. The absence of such a finding rather implies a finding that there was no extrinsic fraud.

Without discussing the question whether the judgment may be thus collaterally attacked, we may say simply that no extrinsic fraud appears in the record. Respondent contends that the lapse of nine years between the filing of the complaint in the New York action in 1942 and the entry of the default judgment in that action in 1951, and appellant's failure to give respondent any notice that she intended to cause such judgment to be entered, and the fact that the parties lived separate and apart under different financial arrangements for a number of years, lulled respondent into a feeling of security whereunder he felt it was unnecessary to take any steps to protect his legal rights. He does not testify to a single representation to him by his wife upon which he placed reliance. As a matter of fact, during this entire period he had no conversations with his wife. Respondent refers to other matters in the record in support of his theory of extrinsic fraud, but they do not carry any convincing weight.

It must be remembered that we are not here reviewing the sufficiency of facts to support a finding by the trial court of extrinsic fraud. There was no such finding. We simply reject the contention that there is a showing of extrinsic fraud in the record which would compel a conclusion that the judgment in favor of respondent necessarily implies a finding of extrinsic fraud.

Our holding that both the full faith and credit requirement and the rule of res judicata require reversal applies with like effect to the judgment in favor of the respondent on the $150 promissory note.

The judgment is reversed and remanded with direction to enter judgment in favor of appellant for the full amount of the foreign judgment, together with interest thereon.

The record on appeal contains a great many pages of the briefs submitted to the trial court. Appellant's costs in this court may not include the typewriting of such briefs.

McNAMEE and THOMPSON, JJ., concur.