**WATER WEST, INC., a Nevada Corporation, Plaintiff-Appellee,**

**v.**

**ENTEK CORPORATION, A Texas Corporation, and James Edward Turner, Defendants-Appellants.**

No. 84–5513.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1984.

Decided April 29, 1986.

Gray, Cary, Ames & Frye, Robert W. Ayling, San Diego, Cal., for plaintiff-appellee.

Jenkens & Gilchrist, John C. Eichman, Dallas, Tex., for defendants-appellants.

Before HUG and POOLE, Circuit Judges, and SOLOMON,* District Judge.

HUG, Circuit Judge:

James Turner and Entek Corporation (collectively "Entek") appeal from an order of the district court granting Water West, Inc. ("Water West") summary judgment in its action to enforce a Nevada state court judgment for breach of an exclusive distribution agreement against Entek. Entek challenges the propriety of venue in the Southern District of California. The district court ruled that there were sufficient contacts between Water West's claim and the Southern District to justify venue. We disagree and reverse.

## FACTS

Appellant James Turner is president and owner of appellant Entek Corporation. Turner invented, and Entek manufactures, a porous irrigation tubing known as "Leaky Pipe." In February 1982, Entek entered into an agreement with Water West, granting Water West exclusive distribution rights for "Leaky Pipe" in 11 western States.[1]

In March 1983, Water West sued Entek in Nevada state court, alleging that Entek had breached the distribution agreement by selling to persons in its territory, and by entering into a distributorship agreement with John R. "Chip" Bridges in California. Entek failed to appear, and on May 11, 1983, a default judgment was entered. Entek's motion to set aside the default judg-

ment and quash service of process was denied, and Entek appealed to the Nevada Supreme Court.

This action, in which Water West seeks to enforce the Nevada judgment in California under 28 U.S.C. § 1738, was filed on May 16, 1983, in the United States District Court for the Southern District of California. In September 1983, Water West moved for summary judgment. The court granted a preliminary injunction against Entek on October 17, 1983, but denied summary judgment because of uncertainty whether venue was proper.

On the court's order, Entek moved to dismiss for improper venue under Fed.R. Civ.P. 12(b)(3), or transfer under 28 U.S.C. § 1406(a). The district court, however, denied Entek's motion for change of venue, and Water West again moved for summary judgment. This time, on December 19, 1983, the district court granted summary judgment enforcing the Nevada judgment. Entek filed a timely notice of appeal.

After the appeal was filed, the Nevada Supreme Court heard argument on Entek's motion to set aside the May 1983 default judgment against Entek; on January 2, 1985, the Nevada Supreme Court refused to do so and dismissed Entek's appeal. We had deferred submission pending decision by the Nevada Supreme Court and now consider whether the district court erred in granting Water West summary judgment enforcing the Nevada judgment in the Southern District of California.

## STANDARD OF REVIEW

In reviewing the propriety of a grant of summary judgment, our task is identical to that of the trial court. *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). That is, we must view the evidence and inferences *de novo*, in the

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The 11 States comprising Water West's territory are Washington, Oregon, California, Nevada, Idaho, Montana, Wyoming, Colorado, Utah, Arizona, and New Mexico.

light most favorable to the non-moving party, in this instance, Entek, to determine whether the district court correctly found that there was no genuine issue of material fact and that the moving party, herein Water West, was entitled to judgment as a matter of law. *Id.* The facts are not disputed; the only issue for our consideration is whether, as a matter of law, venue for Water West's enforcement action lies in the Southern District Court of California.

This is a diversity action brought in the State of California to enforce a judgment issued by a state court in the State of Nevada on May 11, 1982. The Nevada judgment permanently enjoined Entek from selling "Leaky Pipe" within the 11 States covered by the distribution agreement and ordered Entek to comply with all terms and conditions of that agreement. In addition, the court awarded Water West compensatory damages of $1,000 per day commencing on the date of the prohibited sale of "Leaky Pipe" to any person and ending on the date that violations of the agreement cease. The court ruled that Water West was also entitled to an accounting from Entek of pipe sales within the 11 States since February 3, 1982, the date of the distribution agreement.

Water West could have brought an action to enforce the Nevada judgment in a California state court. Instead, Water West chose to bring a diversity action in federal court. The federal courts are courts of limited jurisdiction. There is diversity of citizenship because plaintiff, Water West, is a Nevada corporation; defendant, Entek, is a Texas corporation; and defendant, Turner, is a resident of Texas. Assuming that the business conducted by Entek in the State of California is sufficient to afford jurisdiction for an action based on a Nevada judgment, the plaintiff must also satisfy the venue requirements. If these cannot be satisfied, the federal diversity action cannot be brought in California; however, the plaintiff can still bring its action in the California state court. Venue in a diversity action is governed by 28 U.S.C. § 1391(a), which states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

It is apparent that none of the plaintiffs or defendants reside in California, thus the only basis upon which venue can be founded is that the claim arose in the State of California. The claim upon which this action is founded is the Nevada judgment; it is not the underlying claim for the breach of the distributorship agreement. That underlying claim was merged into the Nevada judgment and is extinguished.

Under 28 U.S.C. § 1738, a state court judgment is entitled to the same preclusive effect in federal court as it would be accorded by a state court in the state of rendition. *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.1985). In the present case, the res judicata effect of the Nevada default judgment is determined by Nevada law. Under Nevada law, " '[t]he doctrine of res judiciata precludes parties or their privies from relitigating a cause of action that has been finally determined in a court of competent jurisdiction.' " *Paradise Palms Community Ass'n v. Paradise Homes*, 89 Nev. 27, 30, 505 P.2d 596, 598 (1973) (quoting *Bernhard v. Bank of America Nat. Trust and Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892, 894 (1942)). Res judicata applies to default judgments. *Kernan v. Kernan*, 78 Nev. 93, 97, 369 P.2d 451 (1962).

The two acts relied upon by the dissent to uphold the finding that the claim arose in California are a consignment agreement consummated in March of 1983 and a sale made in April of 1983. These were acts out of which the claim litigated in the Nevada court arose, but they were merged into the Nevada judgment entered May 11, 1983. It is the Nevada judgment that is the claim in this action, not the acts that constituted the claim litigated in Nevada and merged into that judgment. The present claim, based on the Nevada judgment, arose in Nevada.

A holding that venue is improper in this case does not mean that the Nevada judgment is unenforceable in California or that full faith and credit is denied to the Nevada judgment. A state court action is the appropriate method by which these objectives are served. The fact that venue is improper in this case simply means that this is one of the diversity actions that cannot be brought in this federal court, rather than the state court, because it does not meet the statutory venue requirements. The district court's judgment is reversed.

REVERSED.

POOLE, Circuit Judge, dissenting:

I respectfully dissent, believing that sufficient contact existed to justify venue in the Southern District of California.

Water West relies upon the April 1983 sale of approximately 1,000 feet of Leaky Pipe to Joseph Fleming, an Imperial Valley farmer, for a price of $300.00. The Imperial Valley is located in the Southern District. Fleming read about Leaky Pipe in a full page advertisement in "Drip/Trickle Irrigation" magazine. To obtain additional information, Fleming contacted Entek, which was identified in the ad as the manufacturer of the pipe, at its Texas address. After several communications with the Entek office in Texas, Fleming, in the Imperial Valley, was contacted by Bridges, who later made the sale.

Entek argues that this sale does not suffice for venue because Bridges was acting as an independent contractor pursuant to his contract with Entek,[1] and therefore Bridges' conduct cannot be imputed to Entek. The district court disagreed. In its order of December 9, 1983, the court found that a consignment relationship in fact existed between Bridges and Entek.

On appeal, we do not disturb findings of fact made by a district court unless those findings are clearly erroneous. Fed.R.

Civ.P. 52(a); *Dunn v. Trans World Airlines, Inc.,* 589 F.2d 408, 414 (9th Cir.1978). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.; United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The district court's finding of a consignment relationship between Bridges and Entek is not clearly erroneous, despite the express contractual provision to the contrary. Bridges received a sizeable shipment of pipe from Entek on March 4, 1983. The invoice for that shipment indicated no price. One important factor in determining whether an agreement may be termed a consignment or a sale is whether the person receiving the goods is obligated to purchase or pay for those goods. *In re Lexington Appliance Co.,* 202 F.Supp. 869, 871 (D.M.D.1962). When a conditional sale is intended, as opposed to a consignment, the person to whom the goods are delivered incurs an absolute obligation to buy the goods and pay the price. *Id.; Royal Indemnity Co. v. Aetna Insurance Co.,* 231 F.Supp. 657, 660–61, *aff'd,* 338 F.2d 700 (4th Cir.1964). A consignment relationship, on the other hand, imposes upon the consignee no obligation to pay. *Fowler v. Pennsylvania Tire Co.,* 326 F.2d 526, 532 (5th Cir.1964). Moreover, the acts of the parties prevail over any designation of the nature of the relationship. *In re Lexington Appliance Co.,* 202 F.Supp. at 871.

The conduct of the parties in this case supports the district court's finding of a consignment agreement. The absence of a price on the invoice for the large shipment of Leaky Pipe sent to Bridges by Entek indicates that Bridges assumed no immediate obligation to pay. Moreover, Bridges characterized the relationship as one of consignment in an affidavit submitted in

---

1. Paragraph four of the Agricultural and Non-Agricultural Distributorship Agreements entered into between Entek and Bridges provides:
   NO AGENCY, PARTNERSHIP, ETC.
   The parties hereto are independent contractors and nothing contained in this Agreement shall be deemed or construed to create the relationship of partnership or joint venture or principle and agent of or any association or relationship between the parties other than that of buyer and seller.

support of Entek's opposition to venue. The trial court's analysis of facts on this issue is not clearly wrong, and its determination that a consignment existed should be upheld.

A contract of consignment creates a bailment with authority in the bailee as the bailor's agent to sell property to third parties. *See Miniature Vehicle Leasing Corp. v. United States,* 266 F.Supp. 697, 701 (D.N.J.1967); *In re Lexington Appliance Co.,* 202 F.Supp. at 871. Consequently, it is a type of agency in which the acts of the consignee may be imputed to the consignor. *Porter v. Hermann,* 8 Cal. 619, 624 (1857); *Harbor Supply Co. v. Motor Boat Astorian,* 116 Cal.App. 563, 567, 2 P.2d 1004 (1931).

Since Bridges, in his consignment relationship with Entek, was Entek's agent, his sale of pipe to Fleming and his other activities in the Southern District of California are imputable to Entek. This sale to Fleming alone constituted a significant contact justifying venue in the Southern District. That sale was expressly prohibited under Water West's exclusive distributorship agreement and resulted in injury warranting relief.

But the sale to Fleming was not the only contact between the Southern District and Water West's claim for enforcement. At least one other sale of pipe was made by Entek in the Southern District to John Scott, a resident of San Diego County, who purchased pipe from Turner in November or December 1982.

Entek, through Bridges, also conducted an extensive Leaky Pipe promotional campaign targeted at residents of the Southern District. Bridges placed Leaky Pipe advertisements, which were provided and paid for by Entek, in magazines published and circulated in the Southern District. Entek also supplied Bridges with other advertising materials, including brochures and photographs. Additionally, Bridges conducted a direct mail campaign to residents of the Southern District advertising meetings on Leaky Pipe to be held in Fresno and Laguna Hills by Entek in conjunction with Bridges.

As the result of Entek's conduct in promoting and selling Leaky Pipe in the Southern District of California, Water West suffered direct and immediate injury. Dale Stein, Director and Vice-President of Marketing for Water West, submitted an affidavit in which he stated that the injury to Water West in Southern California was particularly acute, because San Diego and Imperial Counties together constituted the "most important target market of Water West, Inc. outside of Nevada." Because of Entek's breach of the exclusive distributorship agreement, Water West's efforts to develop a market for Leaky Pipe in that area were being severely hampered.

The district court was persuaded that these facts demonstrated sufficiently substantial contacts to establish venue in the Southern District of California. I agree. Water West should be entitled to enforce its judgment, and secure appropriate relief from the illegal conduct of Entek in the Southern District of California.

Because the majority declines to accord proper respect to the district court's findings as to contacts within the district of the forum, I respectfully dissent.