**Decided May 12, 1987**

F I L E D
Clerk
District Court

UNITED STATES DISTRICT COURT MAY 12 1987
FOR THE
NORTHERN MARIANA ISLANDS For The Northern Mariana Islands

By _____ 
(Deputy Clerk)

APPELLATE DIVISION

GOVERNMENT OF THE NORTHERN      )        DCA NO. 86-9027
MARIANA ISLANDS,                .)
                                )        CTC CIV.NO. 84-329
          Plaintiff-Appellee,   )
                                )
              vs.               )        OPINION
                                )
MICRONESIAN INSURANCE           )
UNDERWRITERS, INC., et al.,     )
                                )
          Defendants-Appellants.)
_____)

          Counsel for Appellee:    MARCIA BELL
                                   Law Office of Fennell
                                   P. O. Box 49
                                   Saipan, CM  96950

          Counsel for Appellants:  DOUGLAS F. CUSHNIE
                                   Attorney-at-Law
                                   P. O. Box 949
                                   Saipan, CM 96950

BEFORE:  LAURETA, DUENAS, and FITZGERALD*, District Judges

LAURETA, District Judge:

          The Commonwealth of the Northern Mariana Islands (CNMI)
filed suit against defendants Albert Camacho and the Commonwealth

_____

          *The Honorable James M. Fitzgerald, Chief Judge, United States
District Court of Alaska, sitting by designation.

1165

Bank (Bank), among others, to recover funds on deposit that were lost when the Bank was forced into receivership.[1] The Bank cross-claimed against Camacho alleging that pursuant to Title 37 Trust Territory (T.T.) Regulation Part 2.7 he was liable for the losses suffered by the shareholders and creditors. The Bank's motion for summary judgment was granted and Camacho appeals. We reverse and remand for the following reasons.

## STATEMENT OF THE FACTS

In 1981, Camacho leased real property in Garapan, Saipan, to the Greenmount Development Mariana Corporation (Greenmount) which in turn leased the property to the Bank. Construction began on the 34,288 square meter tract of land by leveling three 3-bedroom homes to provide space for the Bank's building. Camacho was to receive $6,000 monthly rental and three 3-bedroom houses to be built on separate land owned by him to replace the three that were destroyed.

The Commonwealth Bank was chartered in 1982. The amended Articles of Incorporation filed with the Registrar of Corporations lists five directors, including defendant Camacho.

---

[1] The suit by the CNMI against Camacho is not pertinent to this appeal. The issues in this appeal involve only the cross-claim by defendant Bank against defendant Camacho.

The Bank was undercapitalized from its inception. The Bank continued to have financial problems throughout its existence. In April, 1984, it was forced into receivership.

The CNMI filed suit against the Bank and Camacho, as well as several other defendants not relevant to this appeal. The Bank filed a cross-claim against Camacho. The cross-claim alleged that Camacho and the other bank directors engaged in business without complying with Title 37, Part 2.7 of the Corporate Regulations of the Trust Territory. Specifically, it was alleged that:

    1) The Bank failed to obtain subscriptions of three-fourths of the authorized capital stock;

    2) Ten percent of the authorized capital stock was not paid in when the Bank commenced business; and

    3) Affidavits setting out compliance with these regulations as required by §2.5 were not timely filed.

The Bank alleged that $600,000 had been lost as a result of the directors' mismanagement. It claimed that the directors were jointly and severally liable for this amount pursuant to Part 2.7.

The Bank moved for partial summary judgment against Camacho on the issue of liability.[2] In support of its motion the

_____

[2] The Bank's motion for partial summary judgment merely adopts as its own the CNMI's earlier motion for the same relief.

Bank presented to the court the following:[3/]

1) The Bank's application for a business license dated June 11, 1984;

2) The Bank's business license issued June 14, 1984;

3) A certified copy of a Certificate of Amendment of the Articles of Incorporation listing Albert Camacho as a director of the Bank, executed September 24, 1982 and filed with the Registrar of Corporations September 28, 1982;

4) The deposition, affidavit, and accompanying exhibits of William Heston, a C.P.A. who audited the Bank. Heston's investigation revealed that (a) the Bank was undercapitalized when it began operating, (b) 10% of its authorized capital stock was not paid in, and (c) three-fourths of its authorized capital was not subscribed.

5) A resolution of the board of directors purportedly signed by Camacho on October 1, 1981;

6) The minutes of the February 3, 1983 board of directors' meeting in which Camacho was elected secretary and appointed to the Personnel Committee;

7) A representation by proxy of Camacho at a May 25, 1983 board of directors' meeting;

8) The minutes of a July 6, 1983, board meeting indicating Camacho was in attendance; and

9) The minutes of an October 16, 1983, board meeting indicating Camacho was in attendance.

_____

[3/] These documents show that Camacho attended at least two board meetings.

Camacho did not dispute the fact that the Bank was undercapitalized when it opened. Nor did he dispute the fact that Part 2.7 assessed liability on corporate directors who operate an undercapitalized corporation.

Camacho, however, denied that he was a director of the Bank. He submitted his deposition to contradict the Bank's claims that he was a director. Basically, his deposition testimony stated that he did not know that he was a director of the Bank. He claimed that he only attended the board of directors' meetings in an attempt to collect lease money for the land that the Bank was leasing from him through Greenmount. He indicated that he could not read, write, or speak the English language. He claimed that he had never signed any Bank documents as a director.

The trial court granted the Bank's motion for summary judgment. Camacho appeals. He raises two issues on appeal:

1.  WHETHER THE TRIAL COURT CORRECTLY DETERMINED THAT THERE WAS NO GENUINE ISSUE AS TO WHETHER CAMACHO WAS A DIRECTOR OF THE BANK WHEN IT GRANTED THE BANK'S MOTION FOR SUMMARY JUDGMENT.

2.  WHETHER PART 2.7 WHICH IMPOSES LIABILITY ON DIRECTORS OF AN UNDERCAPITALIZED CORPORATION FOR LOSSES SUFFERED BY ITS SHAREHOLDERS AND CREDITORS IS AN UNCONSTITUTIONAL TAKING OF PROPERTY IN CONTRAVENTION OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE UNITED STATES CONSTITUTION.

///
///

The Court will only address the summary judgment decision since it finds that the trial court erred and that this issue is dispositive of the appeal.

An appellate court reviews the propriety of a grant of summary judgment on a de novo basis. Water West, Inc. v. Entek Corp., 788 F.2d 627, 628 (9th Cir. 1986)(citing M/V American Queen v. San Diego Marine Construction Corp., 708 F.2d 1483,1487 (9th Cir. 1983).

Camacho challenges the trial court's granting of summary judgment on several grounds. He argues that the court improperly relied upon Exhibit H to the deposition of Manuel Sablan, a director and President of the Bank. Exhibit H to the Sablan deposition was a board resolution purportedly signed by Camacho. First, Camacho argues that it was not specified by the movants[4] in their moving papers. He cites Celotex Corp. v. Catrett, 91 L.Ed.2d 265 (1986), in support of the proposition that this was their burden. The Bank responds to this argument by pointing out that although it bore the initial responsibility of informing the court of the basis for its motion, it was not obligated to provide affidavits negating Camacho's claim that he

_____

[4] The Bank and the CNMI joined in the motion for partial summary judgment against Camacho. Camacho alleges that neither party specified in their moving papers that they would rely on Exhibit H.

was not a director. It also cites Celotex. Additionally, the Bank points out that Camacho himself cited the Sablan deposition and exhibits thereto in its opposition to the Bank's motion for summary judgment. The Bank argues that this supports the trial court's conclusion that Camacho was not surprised when the trial court based its decision, in part, on these exhibits.

Camacho refers to pages of the transcript in which the trial court stated that it would not rely upon the Sablan deposition and the accompanying Exhibit H. For this reason the court denied Camacho the opportunity to challenge Exhibit H with a counter-affidavit.

Camacho also challenges what he characterizes as the court's finding that he was a director of the Bank. He stands on his deposition testimony, which refutes the fact that he acted as a director of the Bank. His deposition testimony further sets out that he never served the Bank in any capacity. Camacho asserted throughout the proceedings that he attended Bank board meetings because he was led to believe that that was how he could be assured of payment for rental due him.

Rule 56 of the Commonwealth Trial Court Rules of Civil Procedure governs summary judgment in the trial court. It is identical to the federal rule. Summary judgment is appropriate where a trial court finds that there are no material issues of fact and, therefore, the moving party is entitled to judgment as a matter of law. Celotex, 91 L.Ed.2d at 273. The movant must demonstrate to the trial court through the pleadings,

AO 72
(Rev.8/82)

depositions, answers to interrogatories, affidavits, and exhibits that there are no genuine issues of material fact. Id. at 274. Generally, evidence submitted in support of a motion for summary judgment must comply with the rules governing admissibility of evidence in a trial. Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators, 563 F.2d 205 (5th Cir. 1977). Affidavits accompanying a motion must affirmatively show that the affiant is competent to testify to the matters therein and that the facts stated in the affidavit are based on affiant's personal knowledge. Barber v. Norman, 651 F.2d 1107 (5th Cir. 1981). "[D]ocuments must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)..." 10 Wright and Miller, Federal Practice and Procedure: Civil 2d §2722, pp. 58-59. "[T]he affiant must be a person through whom the exhibit could be admitted into evidence." Id. at 60. The trial court views the evidence and inferences in a light most favorable to the non-moving party. Water West, Inc., 788 F.2d at 629. The lack of a genuine issue of material fact results in a judgment in movant's favor as a matter of law. Id.

The trial court did rely on Exhibit H to the Sablan deposition. Exhibit H purports to be corporate minutes of a Bank board of directors' meeting which contains a resolution by the board of directors that was allegedly signed by Camacho. The Sablan deposition, however, was not before the trial court. See CNMI v. M.I.U., CV 84-320, Summary Judgment Re: Albert Camacho, July 18, 1986, p. 3, fn.2 (By the court: "Thus, the [Sablan]

1172

deposition has not been filed with the Court and any testimony therein is not considered by the Court.") Nevertheless, Exhibit H of the Sablan deposition was attached to the affidavit of Camille Pangelinan, an employee of a secretarial firm that transcribed the deposition.

Camacho objected to the court's reliance on Exhibit H for the reason that Pangelinan could not provide a proper foundation for the admissibility of Bank documents. While the trial court informed Camacho that it would not rely on the exhibit, it did later base its decision, in part, on that very document. The court attempted to remedy this apparent contradiction by pointing out that Camacho was aware of Exhibit H, and therefore he was not surprised by it surfacing at the hearing. Camacho argues that his knowledge of the document is irrelevant and that the court should not have relied upon it.

Camacho's argument is persuasive but he overlooks one fact. Exhibit H had been filed with the court on December 24, 1985, as Exhibit 12 to the deposition of Norman Chan.[5/] Chan signed the minutes as a member of the Board of Directors. His signature appears directly above the one purported to be Camacho's.

---

[5/] Parties to this appeal apparently overlooked this also since no reference was made to Chan's deposition in the briefs or arguments.

AO 72
(Rev.8/82)

Though Exhibit H was not before the court via the Sablan deposition, nor properly before the court via the Pangelinan deposition, it was properly there via the Chan deposition. The document could have been introduced into evidence through Chan who signed it as a member of the Board of Directors. Though the trial court may have committed error by considering Exhibit H to the Sablan deposition, the fact that this was properly before the court through the Chan deposition renders this error harmless.

The issue remaining is whether there was a question of fact as to whether Camacho was a Bank director. Camacho said he was not. He said that he never acted for the Bank and that he never signed anything for the Bank. The Bank argued that he was. It introduced exhibits to support its position. But for the court to rule in favor of the Bank, it had to weigh Camacho's deposition testimony against the Bank's documentary evidence. By implication, it ruled that the Bank's documentary evidence was more credible than Camacho's deposition testimony. This it cannot do in a summary judgment proceeding. Camacho's deposition testimony raises a question of fact as to whether he was ever a director or whether he attended board meetings as a director, or whether he ever signed documents as a director. This can only be determined after a full hearing.

///
///
///

1174

For these reasons the trial court's ruling is REVERSED and this matter is REMANDED for trial on the merits.

_____
JUDGE ALFRED LAURETA

_____
JUDGE CRISTOBAL C. DUENAS

_____
JUDGE JAMES M. FITZGGERALD

AO 72
(Rev.8/82)