Decided April 12, 1989

IN THE DISTRICT COURT FOR THE

NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

GOVERNMENT OF THE NORTHERN MARIANA )
ISLANDS,                           )
                                   )
    Plaintiff-Appellant,           )
                                   )   DCA No. 86-9035
    vs.                            )   CTC No. 84-329
                                   )
MICRONESIAN INSURANCE              )
UNDERWRITERS, INC.,                )
                                   )
    Defendant-Appellee,            )
                                   )
    vs.                            )
                                   )
COMMONWEALTH BANK OF THE           )
NORTHERN MARIANAS, INC.,           )
                                   )
    Defendant-Cross-Appellant.     )
_____)

Attorney for Appellant,
Government of the Northern
Mariana Islands:              ALEXANDER C. CASTRO, Atty General
                            R. KEITH PARTLOW, Asst. Atty General
                            Office of the Attorney General
                            Saipan, CMNI 96950

Attorney for
Cross-Appellant,
Commonwealth Bank of the
Northern Marianas, Inc.:     MARCIA R. BELL
                            P.O. Box 49
                            Saipan, CNMI 96950

Attorney for Appellee,
Micronesian Insurance
Underwriters, Inc.:          MARYBETH HERALD
                            Fitzgerald, Herald & Bergsma
                            P.O. Box 909
                            Saipan, CNMI 96950

732

BEFORE:  LAURETA[*], District Judge, DUENAS[**], Senior Judge, and TASHIMA[***], District Judge

DUENAS, Senior Judge:

This matter comes before the Court on cross appeals by the Government of the Commonwealth of the Northern Mariana Islands (Government) and the Commonwealth Bank of the Northern Marianas, Inc.

## Background

The Commonwealth Bank of the Northern Mariana Islands (Bank) was chartered in April, 1982, and began operations in early 1983. At no time did the Bank provide the Government with proof of its capitalization.

Thereafter the Government became a prospective depositor and requested that the Bank obtain a bond to insure a $600,000 deposit it intended to make. Bank directors and certain

---

[*] The Honorable Alfred Laureta sat as the Presiding Judge over this appeal. His tenure as Chief Judge of the District Court for the Northern Mariana Islands terminated prior to the issuance of this Opinion.

[**] The Honorable Cristobal C. Duenas, Senior Judge, United States District Court for the District of Guam, sitting by designation.

[***] The Honorable A. Wallace Tashima, District Judge, United States District Court for the Central District of California, sitting by designation.

incorporators arranged a meeting between Micronesian Insurance Underwriters, Inc. (MIU) Vice President and General Manager Ernest Milne and an attorney who drafted the bond. The incorporators assured Milne at the meeting that the Bank was adequately capitalized. In November· 1983 the Government deposited $600,000 with the Bank secured by a bond issued by MIU.

The Bank's initial failure to adequately capitalize, combined with subsequent financial problems, forced the Bank into receivership in May, 1984. The Government requested that MIU honor its bond obligation. MIU refused based on its belief that the Government had failed to enforce applicable banking regulations thereby exposing MIU to a greater risk than it had bargained for. MIU additionally maintained that the Government knew or should have known that the Bank was undercapitalized when it originally sought the bond from MIU and should have informed MIU of the Bank's financial condition.

The Government filed suit to compel MIU to honor the bond obligation. MIU answered and brought a third-party complaint against the Bank and its directors seeking indemnification. The Bank cross-claimed against the individual directors. The Government then amended its complaint to include the individual directors as defendants. The Bank amended its cross-complaint to add the Government as a defendant under a theory of negligence.

MIU brought a motion for summary judgment against the Government based on Section 124 of the Restatement of Securities. The trial court granted MIU's motion finding that the Government

withheld material information from MIU regarding the Bank's financial status when MIU issued the bond.

The remainder of the case proceeded to trial resulting in a finding by the trial court that the Director of Banking (Director) was negligent in failing to revoke the Bank's charter after the Bank failed to comply with applicable banking regulations. Finding a private right of action, the trial court held that the creditors were injured by the Government's failure to enforce its own regulations which were designed to protect creditors. The Government was found liable to the creditors in an amount in excess of $190,000.

Following the trial, the Government moved for a new trial on the basis that the trial judge's impartiality and objectivity were impaired by his having supervised the receivership of the Bank while simultaneously acting as the trial judge. The Government's motion was denied.

The Government appeals the decision of the trial court granting MIU's motion for summary judgment; the finding that the Government negligently failed to enforce applicable banking regulations; the court's order permitting the Bank to offset remaining government deposits with the judgment against the Government; and the denial of its motion for a new trial.

The Bank appeals the trial court's denial of its request for pre-judgment interest and a ruling reducing the directors' liability.

## Banking Regulations

Prior to the enactment of new banking regulations in February 1984, Section 2.7 of Title 37, Trust Territory Regulations governed the capital necessary to engage in business and the liability of directors of such corporations. Section 2.7 is set forth _infra_ at page 12.

Regulations, which became effective on June 6, 1983, and which are found at 4 CMC §6201 et seq., were promulgated by the Director of Commerce and Labor pursuant to authority found in Public Law 108, Chapter 9 and Public Law 3-11, Section 503. These regulations sought to correct the omission in Section 2.7 which allowed banks to open without any meaningful supervision and control and without adequate capitalization.

The Director interpreted the June 1983 banking regulations to allow existing banks 18 months from June 1983 in which to either obtain deposit insurance or the capital and paid-in surplus required by Section 6(b) of the regulations.

The trial court rejected the Director's interpretation and found, in relevant part, that Section 6(a) allowed existing banks 18 months from June 6, 1983, to secure federal deposit insurance. Section 6(c) requires existing banks to supply proof of the minimum capitalization requirements or proof of Federal Deposit Insurance (FDIC) or Federal Savings and Loan Insurance coverage (FSLIC) within 120 days of June 6, 1983.

## Government v. MIU

### Motion for Summary Judgment

On October 18, 1985, the court granted MIU's motion for summary judgment based on Section 124 of the Restatement of Securities finding that the Government's failure to disclose information regarding the Bank's financial status increased the risk to the surety, MIU.[1] In support of its motion for summary judgment MIU filed the Affidavit of Ernest Milne and two depositions taken in the receivership action.

At the hearing the Government objected to the use of the depositions and argued that Section 124 did not apply as a matter of law.

We review the grant of summary judgment de novo. Water West Inc. v. Entek Corp., 788 F.2d 627 (9th Cir. 1986); Matter of McLinn, 739 F.2d 1395 (9th Cir. 1984)(en banc). A motion for summary judgment is proper when there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Planet Insurance v. Mead Reinsurance Corp., 789 F.2d 668, 670 (9th Cir. 1986).

The Government argues that summary judgment was improper both because there were genuine issues of material fact and because the trial court misapplied the law. The Government construes Section 124 as an estoppel theory. Citing Heckler v. Community Health Services of Crawford, 467 U.S. 51, 104 S.Ct. 2218 (1984) and JAA v. United States Immigration and Naturalization Service, 779 F.2d 569 (9th Cir. 1986), the

Government argues that it may not be estopped under the same terms as other defendants.

MIU takes exception to the Government's interpretation of Section 124 as an estoppel theory. Citing David v. Griley, DCA No. 9018 (Sept. 11, 1987), MIU further argues that the Government's estoppel argument, raised for the first time on appeal, has been waived.

In David, the plaintiffs sued the CNMI alleging negligence by an independent contractor physician working at the government-run hospital. The CNMI prevailed on a motion for summary judgment on the theory of immunity found at 7 CMC §2202(a).

The David opinion focuses on the sovereign immunity of the CNMI. In footnote 2 of the opinion the Court notes that the Davids improperly raised estoppel as a defense for the first time on appeal. Despite MIU's contention, David does not reach the question whether an estoppel defense raised by the Government for the first time on appeal may properly be before the Court.

However, the Court agrees that the Government has waived the defense of estoppel. The Government argues that the estoppel argument may be considered by this Court because we review the proceedings below de novo. Generally, an appellate court may not take into consideration arguments raised for the first time on appeal, regardless of the standard of review. Bolker v. Commissioner of Internal Revenue, 760 F.2d 1039 (9th Cir. 1985). The Government's interpretation of the scope of a de novo review is erroneous.

738

Before reaching the merits of the grant of summary judgment we address certain procedural matters raised by the Government on appeal.

First, in support of its motion for summary judgment MIU submitted the affidavit of Ernest Milne, which violated Rule 56(e) of the Commonwealth Trial Court rules of Civil Procedure which mirrors Rule 56(e) of the Federal Rules of Civil Procedure.[2] The trial court correctly noted, however, that the Government failed to raise any objection to the hearsay statements contained therein. Once again, the Government may not complain on appeal about matters which should have been raised below. See, Faulkner v. Federation of Preschool & Comm. Educ. Ctrs. Inc., 564 F.2d 327 (9th Cir. 1977); In re Teltronics Services, Inc., 762 F.2d 185 (2nd Cir. 1985). The trial court did not err in relying on the unobjected to Milne affidavit in rendering its decision on the motion for summary judgment.

Second, the Government objected to the use by the trial court of two depositions taken in the receivership proceeding, in which the Government was not a party. Testimony taken at depositions in separate civil proceedings are only admissible if the subject matter and the parties are identical. McKay v. American Potash & Chemical Co., 268 F.2d 512 (9th Cir. 1959). However, Hoover v. Switlick Parachute Co., 663 F.2d 964 (9th Cir. 1981), suggests that, based on the objections raised below, the trial court could have admitted the depositions as affidavits.

Even if we find that the use of the two depositions was erroneous because the Government was neither a party to that proceeding nor did the Government have had a similar motive to cross-examine during those depositions the result would not have changed.[3]

In rendering its decision the trial court took into consideration the fact that the Government possessed the information whether the Bank had filed proof of adequate capitalization. The court determined that it would have been simple for the Government to file an affidavit to that effect. Instead, the Government chose not to file any affidavits or documentary evidence in opposition to the motion for summary judgment. The court noted that rather than supply the court and the parties with this information for the summary judgment motion the Government suggested that MIU conduct discovery to find out if the Bank ever filed this information with the Government.

The trial court was presented with evidence from MIU only. The Government's legal argument in opposition to the motion for summary judgment did not satisfy the clear mandate of Rule 56(e) which states in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Anderson, supra and Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 I.Ed.2d 265 (1986), make it clear that a party opposing a motion for summary judgment supported by affidavits cannot rest on its pleadings nor assert legal argument to defeat the motion.

The Government's opposition was based on legal argument. No evidence was presented to counter the evidence presented in support of the motion for summary judgment. The trial court's decision granting summary judgment in favor of MIU is affirmed.

## Bank v. Government

We review questions of law de novo. Prestin v. Mobil Oil Corp., 741 F.2d 268 (9th Cir. 1984). The Government was held liable to the Bank for failing to enforce the banking regulations. The lower court interpreted the banking regulations as creating a private right of action against the Government for failing to protect creditors from losses due to the Bank's gross mismanagement.

The receiver prevailed against the Government on a negligence theory for damages suffered by depositors as a result of the Director's failure to enforce the banking regulations. The trial court awarded damages against the Government from November 1, 1983, through May, 1984, on the basis that had the Director enforced the regulations he would have learned soon after October 6, 1983, that the Bank was undercapitalized.[4]

The trial court found that the Director had a duty to enforce the regulations and the director's own order of February

15, 1984, which, among other directives, mandated the Bank to undergo an immediate audit and to close on any day in which withdrawals exceeded $5,000.

The court found that the Director breached his duty and that the creditors suffered damages as a proximate result of that breach. Citing Tcherepnin v. Franz, 570 F.2d 187 (7th Cir. 1978), cert. denied, 439 U.S. 876 (1978), the trial court interpreted the 1983 regulations and the 1984 Banking Code as imposing a duty on the Director to enforce the regulations for the benefit of its depositors.

We disagree with the trial court's finding that the legislature intended a private right of action. In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court set forth a four-part test to determine whether the legislature intended to create a private right of action. Although the Cort test is directed primarily to federal claims, essentially the same test is applied by state courts. See e.g., Moradi-Shalal v. Fireman's Fund Ins. Co., 42 Cal.3d 287, 299-304 (1988).

[8] There is neither legislative history nor direct precedent to support the trial court's conclusion that a private right of action may be inferred from the circumstances presented here. Given the lack of any indication of legislative intent to create a private right of action against the Government for violation of a banking regulation, we follow Harmsen v. Smith, 586 F.2d 156 (9th Cir. 1978), rather than Tcherepnen.

Absent a private right of action the Bank lacks standing to sue the Government for its failure to enforce the banking regulations. Accordingly, we reverse the trial court's finding that the Government is liable for its failure to enforce the banking regulations and the finding that the Government is monetarily liable to the creditors.

The court's holding permitting the Bank to offset remaining Government deposits with the judgment against the Government is reversed. Our holding renders moot the issue whether the court erred in not granting a new trial based on the impropriety of the trial judge handling the trial while supervising the receivership proceeding.[5]

### Bank v. Directors

On appeal the Bank argues that the court erred in denying creditors pre-judgment interest and by reducing the directors' liability to the extent that the directors' liability runs to other directors.

The receiver brought a complaint against the directors of the Bank for the losses suffered by the creditors. The complaint was based on Section 2.7 of Title 37 of the Trust Territory Regulations, which provides:

> No corporation for profit shall upon the incorporation thereof engage in business in the Territory until three-fourths of its authorized capital stock has been subscribed for nor until ten percent of its authorized capital stock has been paid in by the acquisition of cash or by the acquisition of property of a value equal to ten percent of the authorized capital stock... In case of any violation of this section by any

corporation, the incorporators and the directors thereof at the time the corporation commences to engage in business shall in their individual and private capacities by jointly and severally liable to the corporation and the stockholders and creditors thereof in the event of its bankruptcy or insolvency or in the event of its dissolution for any loss suffered by the corporation or its stockholders or creditors.

An award of pre-judgment interest lies within the discretion of the trial court. <u>See</u>, <u>Hemlani v. Villagomez</u>, DCA No. 80-9004 (1987).

The trial court ruled that the directors were liable for the losses suffered by the creditors. The receiver requested, but was denied, pre-judgment interest running from the filing of the receivership proceeding until the judgment. The trial court reasoned that the losses suffered by the creditors from the date of the filing of the receivership were losses attributed to the receivership proceeding, not losses incurred as a result of any action or inaction of the directors.

The Bank argues that the pre-judgment interest sought is not contingent upon events that transpired during the receivership, but rather stems from the loss occasioned as the result of the depositors being denied the use of their money during the receivership. The Bank takes exception to the trial court's assumption that the pre-judgment interest sought was interest due on deposits on account during the receivership proceeding.

The trial court found certain directors liable under Section 2.7 for the losses to the corporation, shareholders, creditors and depositors as of April 27, 1984, the effective closing date

**744**

of the Bank.  As of that date the losses of the Bank were found to be $489,625.

The trial court declined to award an additional $342,133,07 for pre-judgment interest computed on depositors' losses from the date of the receivership, May 1, 1984, to the date of judgment, reasoning that liability for interest payments on depositor accounts was assumed by the receiver when he took control of the bank.  Interest owed on accounts after the filing of the receivership proceeding was held not to be a "loss" within the meaning of Section 2.7 for which directors and incorporators may be liable.

The trial court misconstrued the nature of the pre-judgment interest claim asserted by the receiver, which was a claim to recover interest for the use of the depositors' money in order that they may be made whole.

We reverse the denial of pre-judgment interest.  On remand the trial court should reconsider, in his discretion, an award of pre-judgment issue based on the nature of the pre-judgment interest sought.

The Bank also appeals the trial court's finding that Section 2.7 allows for the reduction in directors' liability to the extent that liability runs to other directors.  The trial court found that the total loss suffered by the Bank as a result of the directors' mismanagement was $489,625.  The trial court reasoned, however, that assessing this amount against the directors would ultimately benefit derelict directors because $203,500 of the

total loss was owed to directors as shareholders. The court thus reduced the director's Section 2.7 liability by $203,500.

The court's attempt to avoid improper enrichment of one co-defendant/director at the expense of the other misconstrues the clear and unambiguous language of Section 2.7, which holds breaching directors liable for stockholder losses. The trial court was compelled to apply the plain meaning of Section 2.7. Caminetti v. Untied States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed.2d 442 (1917); Paul v. Andrus, et al., 639 F.2d 507 (9th Cir. 1980).

The trial court should not have reduced the directors' liability by $203,500. We reverse the trial court's ruling on this issue and remand the case for a finding consistent with the Court's holding herein.

This matter is affirmed in part and reversed in part and remanded for proceedings consistent herewith.

_____
CRISTOBAL C. DUENAS
Designated Senior Judge

_____
A. WALLACE TASHIMA
Designated District Judge

1/ Absent written or customary law to the contrary the Restatements of Law are applicable in the Commonwealth of the Northern Mariana Islands. 7 CMC §3401.

Section 124 of the Restatement of Securities provides as follows:

> Where before the surety has undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety.

2/ The Government failed to file any affidavits or other documents in opposition to the motion for summary judgment.

3/ No claim or defense on the bond was made in the receivership proceeding.

4/ The court found that the regulations were effective June 6, 1983. The proof of capitalization requirement was tolled for 120 days to October 6, 1983.

5/ We note that the trial court may have improperly denied the Government's motion for a new trial based on the dual role of the trial judge. See, In re Manoa Finance Co., 781 F.2d 1370, 1373 (9th Cir. 1986).